IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF KENTUCKY

LOUISVILLE

NO._____

|  |  |
|---|---|
|  | ) |
| GREGORY BOURKE and MICHAEL | ) |
| DELEON,   and I.D. AND I.D., minor | ) |
| children, by and through their | ) |
| parents and next friends, GREGORY | ) |
| BOURKE and MICHAEL DELEON , and | ) |
| JIMMY LEE MEADE and LUTHER | ) |
| BARLOWE, and RANDELL JOHNSON | ) |
| and PAUL CAMPION, and T. J.-C. AND | ) |
| T. J.-C  AND D.J.-C. AND M.J.-C., minor | ) |
| children, by and through their | ) |
| parents and next friends, RANDELL | ) |
| JOHNSON and PAUL CHAMPION | ) |
| Plaintiffs | ) |
|  | ) |
| vs. | ) |
|  | ) |
| STEVE BRESHEAR, in his official | ) |
| capacity as Governor of Kentucky; | ) |
| and JACK CONWAY, in his official | ) |

capacity as Attorney General of               )

Kentucky; and BOBBIE HOLSCLAW in      )

her official capacity as Jefferson County      )

Clerk and ELAINE FILIATREAU in her official)

Capacity as Nelson County Clerk                )

                                                                )

                            Defendants      )


## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiffs bring this action to challenge the constitutionality of Kentucky's laws excluding same-sex couples from marriage and voiding within the State of Kentucky the marriages of same-sex couples entered in other states or countries.  KRS 402.040(2)

2. Plaintiffs Gregory Bourke and Michael Deleon, Jimmy Meade and Luther Barlowe, and Randell Johnson and Paul Campion are already married, having wed in either another country or another state. Kentucky does not recognize same-sex marriages.  The Plaintiffs are treated as legal strangers in their home state of Kentucky.

3. Plaintiffs I.D. and I.D. are children of the Plaintiffs, Gregory Bourke and Michael Deleon.  Plaintiffs T.J.-C., T.J.-C, D.J.-C. and M.J.-C are children of Plaintiffs Randell Johnson and Paul Campion. The fact that their parents' marriages are not recognized in Kentucky harms them materially by reducing family resources and stigmatizes them by denying their families social recognition and respect.

4. The Plaintiffs all reside in the Western District of Kentucky, some in Louisville and some in Bardstown and are all active members of their communities and come from all walks of life; including an application consultant, a database administrator, hospital administrator, a school counselor, an optician and an accountant (both also were business owners).  All three of the adult couple Plaintiffs have been together decades, 31 years, 44 years and 22 years respectively.  Two of the Plaintiff couples are raising children

together.  The situations faced by these couples are similar to those faced by thousands of same-sex couples who are being denied the basic rights that are afforded by marriage.

5. The Plaintiff couples, like other committed couples, have cared for each other, supported each other, sacrificed for each other, and made plans for the future with each other. When Jimmy Meade was diagnosed with non-Hodgkin's lymphoma and retired, Luke Barlowe took care of him as a member of a committed couple.

6. Like other couples who have made a lifetime commitment to each other, the Plaintiff couples are spouses in every sense, except that Kentucky law says even though they are married in other jurisdictions, their marriages are not honored here in Kentucky.

7. At present, thirteen states allow same-sex marriage, as does the District of Columbia.

8. As the Plaintiff couples' marriages are not recognized by the state, when they adopted the minor Plaintiffs, they were only able to have one parent listed as the adoptive parent, and the other parent had to go to court to acquire guardianship papers for his own children so that he could be their legal guardian, but not their legal parent.  This is just one example of how the Commonwealth materially impacts the Plaintiff children's lives.

9. The Plaintiffs with minor children have been raising children together for over a decade. The situations faced by the adult Plaintiffs are similar to those faced by thousands of same-sex couples in Kentucky who are being denied the basic rights that are afforded to them by marriage.

10. The Commonwealth's exclusion of same-sex couples from recognition of their marriages adversely impacts the Plaintiffs and same-sex couples across the Commonwealth in other significant ways.  It excludes them from the many legal protections available to spouses. For example, when one spouse dies, the surviving spouse may face serious financial hardship, including the loss of the family house, because he is denied the inheritance tax exemption provided to surviving spouses.  Due to Kentucky's refusal to allow or to recognize their marriages, same-sex couples are also denied many federal protections afforded to other married couples such as the ability to take time off work to care for a sick spouse under the Family Medical Leave Act and access to a spouse's social security retirement benefits.

11. The exclusion from marriage undermines the Plaintiff couples' ability to achieve their life goals and dreams, threatens their mutual economic stability, and denies them "a dignity

and status of immense import." *United States v. Windsor,* No. 12-307, Slip Op., at 18 (U.S. June 26, 2013). Moreover, they and their children are stigmatized and relegated to a second class status by being barred from marriage. The exclusion "tells [same-sex couples and all the world - that their relationships are unworthy" of recognition. Id. at 22-23. And it "humiliates the ...children now being raised by same-sex couples" and "makes it even more difficult for the children to understand the integrity and closeness of their own family and its concord with other families in their community and in their daily lives." Id. at 23.

12. The adult Plaintiffs are old enough to remember when a majority of states had laws prohibiting marriage between people of different races and when the Supreme Court struck down such prohibitions in *Loving v. Virginia*, 388 U.S. 1, 12 (1967), declaring: "The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men."

13. Our courts and our society have discarded, one by one, marriage laws that violated the Constitution's mandate of equality, such as anti-miscegenation laws and laws that denied married women legal independence and the right to make decisions for themselves. History has taught us that the vitality of marriage does not depend on maintaining such discriminatory laws. To the contrary, eliminating these unconstitutional aspects of marriage has enhanced the institution. Ending the exclusion of lesbian and gay couples from marriage is no different. Indeed, in 13 states and the District of Columbia, same-sex couples are marrying and the institution of marriage continues to thrive.

14. This is because, at its heart, marriage is both a personal and a public commitment of two people to one another, licensed by the state. Through marriage, the Commonwealth recognizes a couple's decision to establish a family unit together and support one another and any children of the marriage.

15. Marriage contributes to the happiness of countless couples and their families and also contributes to society. Kentucky, like other states, encourages and regulates marriage through hundreds of laws that provide benefits to and impose obligations on married couples. In exchange, the Commonwealth receives the well-established benefits that marriage brings: stable, supportive families that contribute to both the social and economic well-being of the Commonwealth.

16. Kentucky's exclusion of same-sex couples from marriage infringes on the Due Process and the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. This discriminatory treatment is subject to heightened scrutiny because it burdens the fundamental right to marry and because it discriminates based on sex and sexual orientation. But it cannot stand under any level of scrutiny because the exclusion does not rationally further any legitimate government interest. It serves only to disparage and injure same-sex couples and their families.

17. Plaintiffs bring this suit pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief against Defendants. Specifically, Plaintiffs seek: (a) a declaration that the Commonwealth's prohibition of marriage for same-sex couples and its refusal to recognize marriages of same-sex couples validly entered into outside of the Commonwealth violateS the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (b) a permanent injunction i) preventing Defendants from denying the Plaintiff couple and all other same-sex couples otherwise eligible to marry, the right to marry in the Commonwealth of Kentucky, and ii) directing Defendants to recognize the marriages of the Plaintiff couples and other same-sex couples validly entered into outside of Kentucky.

18. The Plaintiffs were legally married in another jurisdiction and their marriage should be recognized in Kentucky even if at the time of their marriage, it would not have been allowed in Kentucky.  For example, Kentucky does not allow marriage by proxy, as Oklahoma does, but does not specifically void a marriage by proxy once it is legally performed in Oklahoma.  If it did, it would be specifically listed in that statute, just as first cousin marriages are not only not performed here but are voided here, even when legal in the state they were performed in.  This means that but for their gender, the Plaintiffs' marriage would be recognized which is a violation of the Equal Protection Clause of the 14th Amendment.

**THE PARTIES**

**The Plaintiffs**

**Greg Bourke Michael Deleon and I.D. and I.D.**

19. Plaintiffs Gregory Bourke ("Greg") and Michel DeLeon ("Michael") have been together for 31 years and have lived together for 31 years and live in Louisville, Jefferson County Kentucky.  Greg is a 55 year old Applications Consultant at Humana and Michael is a 55 year old Database Administrator at General Electric.  They have been together since they were students at the University of Kentucky.

20. Greg and Michael have two children, Plaintiff I.D., who is a 14 year old girl and Plaintiff I.D. who is a 15 year old boy.  Both of the minor Plaintiffs were adopted by Michael as they could not be legally adopted by both of their parents as the marriage was not recognized by this Commonwealth.  Greg then went to court to be designated the children's legal guardian, but not their parent as this Commonwealth does not recognize a same-sex marriage.

21. Greg and Michael are involved at the children's school, church and extra-curricular activities.  Greg and Michael are active with I.D.'s boyscout troop and I.D.'s basketball team. Michael volunteered with planning school holiday parties and supported Parent Teacher Organization at the children's school and their activities working at school fundraisers. Greg was registered Girl Scout Leader for 8 years and Boy Scout Leader for 6 years, and he volunteered at school cafeteria, and frequently chaperoned school field trips.  Last year Greg was awarded a Legislative Citation from the Commonwealth of Kentucky House of Representatives for his dedicated service to the scouting programs at their children's school. Both have also been involved in numerous volunteer activities through scouting.

22. Greg and Michael are devout Catholics and they, as their children are members of and actively involved with their church. Michael served on the Parish Council for years and was previously Vice Chair.  He is active in several church ministries including Hospitality and Church grounds keeping.  Greg has served on the Worship Committee and Coordinator of the Communion Ministry.  Last year he received the church's annual Stewardship Award for volunteerism.

23. Both children have been active members of the church and have served as volunteers for several years at the annual Vacation Bible School for church youth.  Both children presently attend Catholic High Schools.

24. Greg and Micheal were married in Ontario Canada, as same-sex marriages were not possible in the Commonwealth on March 29, 2004.

25. Greg and Michael would like to have their marriage recognized in the Commonwealth of Kentucky in order to have the same legal protections opposite-sex married couples are afforded in the Commonwealth.  They are unsure of how they might be treated in a time of crisis and therefore had a lawyer draw up powers of attorney for them.

26. In addition, even though they now have the option for same-sex partner health insurance through both of their employers, they would have to pay to add their spouse, but a similar situated opposite-sex married couple would not have to pay to add their spouse on their employers' health insurance plans.

27. Moreover, when either Greg or Michael dies; they will have to pay an inheritance tax at a much higher rate than they would if their marriage was recognized by the Commonwealth.

28. Greg and Michael want their marriage recognized by the Commonwealth because they are concerned their children are being taught that the Commonwealth values their family less and is less deserving of respect and support than other families.

29. I.D. and I.D.grew up knowing that their parents are married. As they got older and came to learn that their parents marriage is not recognized in the Commonwealth, both children felt that this was unfair to the whole family. They know they are a family and want to be legally recognized as one. They believe they should not be deprived of economic resources available to families headed by opposite-sex married couples. And they feel stigmatized by the fact that their parents are excluded from marriage. They believe that allowing their parents to marry would demonstrate that society accepts their family and considers it worthy of respect.

30. For I.D.'s and I.D.'s entire lives, their parents have had to continue to declare themselves "single" on forms for school and activities as Kentucky does not recognize their parents' marriage and therefore demeans the value of their family.

## THE PARTIES
### The Plaintiffs
### Jimmy Meade and Luther Barlowe

31. Plaintiffs Jimmy Meade ("Jim") and Luther Barlowe ("Luke") have been together for 44 years and have lived in Bardstown Kentucky for 7 years.  Jim is 64 year old.  He was an accountant and owned and ran three businesses with Luke before he was diagnosed with non-Hodgkin's lymphoma and retired in 2002. Luke is 71 years old.  Luke was a licensed optician in Kentucky, Ohio, and Iowa and owned three businesses with Jim before he also retired.  They have been together for 44 years, since they met when Jim was a student at Morehead State University.

32. Jim and Luke have worked in Iowa, Tennessee and Georgia before moving to Kentucky to be closer to their family.

33. Luke is a Kentucky native and has been active in the volunteer community for decades.

34. Jim and Luke were married on July 30, 2009 in Davenport Iowa as same-sex marriages were not possible in the Commonwealth on July 30, 2009.

35. Jim and Luke would like to have their marriage recognized in the Commonwealth of Kentucky in order to have the same legal protections opposite-sex married couples are afforded in the Commonwealth.  They are unsure of how they might be treated in a time of crisis and therefore had a lawyer draw up powers of attorney for them.

36. In addition, when either Jim or Luke dies; they will have to pay an inheritance tax at a much higher rate than they would if their marriage was recognized by the Commonwealth.

37. Jim and Luke want their marriage recognized by the Commonwealth because they want the same benefits opposite-sex married couples are entitled to by virtue of their marriage.

**THE PARTIES**

**The Plaintiffs**

**Randell Johnson and Paul Campion**

38. Plaintiffs Randell Johnson ("Randy") and Paul Campion ("Paul") have been together for 22 years and have lived together for 21 years and live in Louisville, Jefferson County Kentucky.  Randy is a 45 year old director of quality management and Paul is a 47 year old counselor.  They have been together since Paul visited a brother who lived in Louisville 22 years ago.

39. Randy and Paul have four children; Plaintiffs T.J.-C. and T.J.-C are twin 18 year old boys, Plaintiff D.J.-C. is a 14 year old boy and Plaintiff M.J.-C. is 10 year old girl.  All three of the minor male Plaintiffs were adopted by Paul as they could not be legally adopted by both of their parents as the marriage was not recognized by this Commonwealth. The Plaintiff M.J.-C.  was adopted by Randy as they could not be legally adopted by both of their parents as the marriage was not recognized by this Commonwealth.

40. Randy and Paul are involved at the children's school and extra-curricular activities.

41. Randy and Paul were married in Riverside California, as same-sex marriages were not possible in the Commonwealth on July 3, 2008.

42. Randy and Paul would like to have their marriage recognized in the Commonwealth of Kentucky in order to have the same legal protections opposite-sex married couples are afforded in the Commonwealth.  They are unsure of how they might be treated in a time of crisis and therefore had a lawyer draw up powers of attorney for them.

43. Also, due to an incident that occurred in the past, they actually carry around copies of their children's adoption papers with them to show that they are the legal parents or guardians of the children (as the State does not currently allow for same-sex married couples to adopt).

44. In addition, as Paul and Randy's marriage is not currently recognized in Kentucky, they would not be eligible for FMLA  if it was needed for their spouse or one of the children whom they were not on the adoption papers for (as the State does not currently allow for same-sex married couples to adopt).  This is a very real concern for them as they have four children and daily have to consider the ramifications of living in a State that does not recognize their marriage.  For instance, in case of a family emergency, FMLA would be something to protect them if they were an opposite-sex married couple, but not when they are a same-sex married couple.

45. Moreover, when Paul or Randy dies; they will have to pay an inheritance tax at a much higher rate than they would if their marriage was recognized by the Commonwealth.

46. Also, when Paul or Randy dies, their children will be taxed differently than children of opposite-sex married couples as they aren't deemed to be legal children of both of their parents.

47. Paul and Randy want their marriage recognized by the Commonwealth because they are concerned their children are being taught that the Commonwealth values their family less and is less deserving of respect and support than other families.

48. T.J.-C. and T.J.-C and D.J.-C. and M.J.-C. grew up knowing that their parents are married. As they got older and came to learn that their parents' marriage is not recognized in the Commonwealth, the children felt that this was unfair to the whole family. They know they are a family and want to be legally recognized as one. They believe they should not be deprived of economic resources available to families headed by opposite-sex married couples. And they feel stigmatized by the fact that their parents are excluded from marriage. They believe that allowing their parents to marry would demonstrate that society accepts their family and considers it worthy of respect.

## DEFENDANTS

49. Defendant STEVE BRESHEAR is the Governor of the Commonwealth of Kentucky. In his official capacity, he is the chief executive officer of the Commonwealth and is responsible for the faithful execution of the laws of the Commonwealth of Kentucky, including the laws that exclude same-sex couples from marrying or having their marriages recognized KRS 402.045(1) and the Kentucky Constitution, Section 233A.

50. Defendant JACK CONWAY is the Attorney General of the Commonwealth of Kentucky. He is sued in his official capacity pursuant to the KRS 15.020.

51. Defendant BOBBI HOLSCLAW is the Jefferson County Clerk of the Commonwealth of Kentucky. She is being sued in her official capacity as such overseas the issuing of marriage licenses and the enforcement of the regulations surrounding said licenses. She is being sued in her official capacity. She is responsible for preparing and approving the marriage license application and marriage license forms used in county offices across the Commonwealth.

52. Defendant Elaine A. Filiatreau is the Nelson County Clerk of the Commonwealth of Kentucky. She is being sued in her official capacity as such overseas the issuing of marriage licenses and the enforcement of the regulations surrounding said licenses. She is being sued in her official capacity. She is responsible for preparing and approving the

marriage license application and marriage license forms used in county offices across the Commonwealth.

53. All Defendants named above are, and at all relevant times have been, acting under color of state law, and are sued in their official capacities.

## JURISDICTION AND VENUE

54. . This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 because the suit raises federal questions under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

55. Venue is proper in the Western District of Kentucky under 28U.S.C. § 1391(b) because Defendants perform their official duties in this district.

## FACTUAL BACKGROUND

56. The Commonwealth presently prohibits persons of the same sex from marrying by stating that "Only a marriage between one man and one woman shall be valid or recognized as a marriage in Kentucky".   Kentucky Constitution, Section 223A, ratified November 2, 2004, provides: Only a marriage between one man and one woman shall be valid or recognized as a marriage in Kentucky. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized. Marriage between members of the same sex is prohibited. See KRS 402.020(1)(d). KRS 402.040(1) provides that if a resident of this state marries in another state, the marriage will be valid in Kentucky if it was valid in the state where solemnized. However, KRS 402.040(2) provides: A marriage between members of the same sex is against Kentucky public policy and shall be subject to the prohibitions established in KRS 402.045. KRS 402.045(1) provides in part that, "A marriage between members of the same sex which occurs in another jurisdiction shall be void in Kentucky." KRS 402,045(2) provides that "Any rights granted by virtue of the [same sex] marriage, or its termination, shall be

unenforceable in Kentucky courts." Thus under these legislative enactments no county clerk, or deputy or assistant county clerk can legally issue a marriage license to applicants of the same sex. KRS 402.990(6)3 provides that any clerk who knowingly issues a marriage license to persons prohibited from marrying shall be guilty of a Class A misdemeanor and removed from office by the judgment of the court in which the clerk is convicted.

57. As a result, marriage in Kentucky is legally available only to opposite-sex couples. Same-sex couples may not marry in Kentucky and if they are married elsewhere, their marriages are not recognized in Kentucky.

**Same-Sex and Opposite-Sex Couples are**
**Similarly Situated for Purposes of Marriage**

58. The Supreme Court has called marriage "the most important relation in life," *Zablocki u. Redhail*, 434 U.S. 374, 384 (1978) (internal quotation marks omitted), and an "expression [] of emotional support and public commitment."*Turner v. Safley*, 482 U.S. 78, 95 (1987). It is "a far-reaching legal acknowledgement of the intimate relationship between two people...." Windsor, Slip. Op. at 20. This is as true for same-sex couples as it is for opposite-sex couples.

59 Same-sex couples such as the Plaintiff couple are identical to opposite-sex couples in all of the characteristics relevant to marriage.

60. Same-sex couples make the same commitment to one another as opposite-sex couples. Like opposite-sex couples, same-sex couples build their lives together, plan their futures together and hope to grow old together. Like opposite-sex couples, same-sex couples support one another emotionally and financially and take care of one another physically when faced with injury or illness.

61. Like some opposite-sex couples, some same-sex couples like the Plaintiffs Greg and Michael and Plaintiffs Paul and Randy are parents raising children together.

62. Same-sex couples seeking to marry are just as willing and able as opposite-sex couples to assume the obligations of marriage.

63. The Plaintiff couples and other same-sex couples in Kentucky, if permitted to marry, would benefit no less than opposite-sex couples from the many legal protections and the social recognition afforded to married couples.

64. There was a time when an individual's sex was relevant to his or her legal rights and duties within the marital relationship. For example, husbands had a duty to support their wives but not vice versa and husbands had legal ownership of all property belonging to their wives. But these legal distinctions have all been removed such that the legal rights and duties of husbands and wives are now identical.

## The Exclusion of Same-Sex Couples from Marriage
## Causes Substantial Harm to Couples and Their Families

65.    By preventing same-sex couples from marrying and refusing to recognize their marriages from others states, the Commonwealth's law deprives them of numerous legal protections that are available to opposite-sex couples in Kentucky by virtue of their marriages. By way of example only:

> a. A married person is exempt from inheritance tax on property left to him by an opposite-sex spouse, including the spouse's share of the couple's home, and, thus, protected against economic distress or loss of a home because of an estate tax bill. KRS 140.070. A same-sex surviving spouse or partner is denied this exemption and must pay a higher rate, which applies to non-family-members. KRS 392.020.

> b. The Commonwealth requires opposite-sex spouses to support one another financially. KRS 404.40. There is no support obligation for same-sex spouses or partners.

66.    Same-sex couples are excluded from these and many other legal protections provided for married couples under Kentucky law.

67.    The exclusion of same-sex couples from marriage also denies them eligibility for numerous federal protections afforded to married couples including in the areas of immigration and citizenship, taxes, and social security. Some of the federal protections for married couples are only available to couples if their marriages are legally recognized in the state in which they live. See, e.g., 42 U.S.C. § 416(h)(1)(A)(i) (marriage for eligibility for social security benefits based on law of state where couple resides at time of application); 29 C.F.R. § 825.122(b) (same

for Family Medical Leave Act). Thus, even Plaintiffs Michael and Greg, who are already married, cannot access such federal protections as long as Kentucky refuses to recognize their existing marriage.

68.    The exclusion from marriage also harms same-sex couples and their families in less tangible ways.

69.    Although the Plaintiff couples are all in long-term committed relationships, they and other same-sex couples are denied the stabilizing effects of marriage, which helps keep couples together during times of crisis or conflict.

70.    Excluding same-sex couples from marriage also harms couples and their children by denying them the social recognition that comes with marriage. Marriage has profound social significance both for the couple that gets married and the family, friends and community that surround them. The terms "married" and "spouse" have universally understood meanings that command respect for a couple's relationship and the commitment they have made.

71.    The exclusion from the esteemed institution of marriage also demeans and stigmatizes lesbian and gay couples and their children by sending the message that they are less worthy and valued than families headed by opposite-sex couples.

72.    The impact of the exclusion from marriage on same-sex couples and their families is extensive and real. The denial of the right to marry causes these couples and their families to suffer significant emotional, physical, and economic hardships.

73.    The Plaintiff couples recognize that marriage entails both benefits to and obligations on the partners and they welcome both.

**Excluding Same-Sex Couples from Marriage Is Not**
**Rationally Related to a Legitimate Government Interest,**
**-Let Alone Able to Withstand Heightened Scrutiny**

74.    As the evidence will show, the prohibition against marriage for same-sex couples in Kentucky is not closely tailored to serve an important government interest or substantially related to an exceedingly persuasive justification. In fact, as the evidence also will show, the prohibition fails any level of constitutional scrutiny. It is not even rationally related to any legitimate justifications that were offered in support of it when the Constitution was amended in

2004 or to any legitimate interest of the Commonwealth that Defendants might now offer as a basis for denying same-sex couples the freedom to marry in Kentucky.

75.    When the Commonwealth enacted the 2004 amendment prohibiting marriage for same-sex couples, legislators in favor of the amendment relied on the fact that at that point there were not states that allowed same-sex marriages, so the amendment was couched as something just maintaining the status quo. There was no way for the drafters of the amendment, and the voters, to know that within a decade, there would be multiple states legalizing same-sex unions.

76.    The justifications given at the time were similar to those in support of the Defense of Marriage Act and none of these justifications, or any other justification that might now be offered, passes Constitutional muster.

77.    Neither tradition nor moral disapproval of same-sex relationships or marriage for lesbian and gay couples is a legitimate basis for unequal treatment of same-sex couples under the law. The fact that a discriminatory law is longstanding does not immunize it from constitutional scrutiny. And the Supreme Court has made clear that the law cannot, directly or indirectly, give effect to private biases and has expressly rejected moral disapproval of marriage for same-sex couples as a legitimate basis for discriminatory treatment of lesbian and gay couples. *Windsor*, Slip Op., at 21 (an "interest in protecting traditional moral teachings reflected in heterosexual-only marriage laws" was not a legitimate justification for the Federal Defense of Marriage Act).

### Preserving the Public Fisc and the Coffers of Private Business

78.    The Commonwealth cannot justify its denial of marriage to lesbian and gay couples by claiming an interest in preserving the public fisc or the coffers of private business. Saving money is not a justification for excluding a group from a government benefit without an independent rationale for why the cost savings ought to be borne by the particular group denied the benefit. Moreover, the evidence will show that there is no factual basis for the notion that allowing and recognizing the marriages of same-sex couples will burden the Commonwealth financially or constitute a burden on businesses.

### Protection of Children

79.    The Commonwealth's ban on marriage for same-sex couples is not rationally related to child welfare concerns. The government has a vital interest in protecting the well-being of children, but the exclusion of same-sex couples from marriage bears no relation to this interest. To the contrary, it harms children in the Commonwealth.

80.    Commonwealth law recognizes that neither sexual orientation nor gender has any bearing on a couple's ability to successfully rear children and, thus, treats gay and lesbian couples the same as heterosexual couples with respect to adoption and recognition as parents through the in loco parentis doctrine. Kentucky judges have granted adoptions to same-sex couples, recognizing that the adoptions are in the best interest of the child. Indeed, the government itself places children for adoption with same-sex couples like Plaintiffs Randy and Paul who adopted one of their son's out of the foster care system. Any assertion that the Commonwealth does not consider same-sex couples equally effective parents cannot be credited given its own conduct evidencing a different view.

81.    Moreover, there is no valid basis for the Commonwealth to assert a preference for child-rearing by opposite-sex couples over same-sex couples. The evidence will demonstrate that there is a consensus within the scientific community, based on over thirty years of research, that children raised by same-sex couples are just as well adjusted as children raised by opposite-sex couples. This is recognized by every major professional organization dedicated to children's health and welfare including the American Academy of Pediatrics, the American Psychological Association, the American Medical Association, the National Association of Social Workers and the Child Welfare League of America.

82.    Other courts have found, after trials involving expert testimony, that there is no rational basis for favoring parenting by heterosexual couples over gay and lesbian couples. See, e.g., *Perry v. Schwazenegger*, 704 F. Supp. 2d 921, 980 (N.D. Cal. 2010) (finding that the research supporting the conclusion that "[c]hildren raised by gay or lesbian parents are as likely as children raised by heterosexual parents to be healthy, successful and well-adjusted" is "accepted beyond serious debate in the field of developmental psychology"), af'd sub nom. *Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), vacated for lack of standing sub nom *Hollingsworth v. Perry*, No. 12-144, 2013 WL 3196927 (U.S. June 26, 2013); *In re Adoption of Doe*, 2008 WL 5006172, at *20 (Fla. Cir. Ct. Nov. 25, 2008) ("[B]ased on the robust nature of the evidence available in the field, this Court is satisfied that the issue is so far beyond dispute that it would  be irrational to

hold otherwise; the best interests of children are not preserved by prohibiting homosexual adoption."), aff'd sub nom *Florida Dept of Children &Families v. Adoption of X.X. G.*, 45 So.3d 79 (Fla. Dist. Ct. App. 2010); *Howard v. Child Welfare Agency Review Bd.*, Nos. 1999-9881, 2004 WL 3154530, at *9 and 2004 WL 3200916, at *3-4 (Ark. Cir. Ct. Dec. 29, 2004) (holding based on factual findings regarding the well-being of children of gay parents that "there was no rational relationship between the [exclusion of gay people from becoming foster parents] and the health, safety, and welfare of the foster children."), aff'd sub nom *Dept of Human Sews. v. Howard*, 238 S.W.3d 1 (Ark. 2006).

83.     Excluding same-sex couples from marriage has no conceivable benefit to children of heterosexual couples. Denying same-sex couples the right to marry does not encourage opposite-sex couples who have children to marry or stay married for the benefit of their children. And regardless of whether same-sex couples are permitted to marry, the children of opposite-sex spouses will continue to enjoy the same benefits and protections that flow from their parents' marriage.

84.     Excluding same-sex couples from marriage serves only to harm the children raised by lesbian and gay couples by denying their families significant benefits and by branding their families as inferior and less deserving of respect and, thus, encouraging private bias and discrimination. According to the 2010 United States Census, there are over 2800 same-sex couples raising children in Kentucky. The state's interest in the welfare of children of lesbian and gay parents is or should be as great as its interest in the welfare of other children.

## CLAIMS FOR RELIEF

## COUNT I:

### Deprivation of the Fundamental Right to Marry in

### Violation of the Due Process Clause of the

### Fourteenth Amendment to the United States Constitution

### (42 U.S.C. § 1983)

85.     Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

86.     The Fourteenth Amendment to the United States Constitution precludes any State from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Governmental interference with a fundamental right may be sustained only upon a showing that the legislation is closely tailored to serve an important governmental interest.

87.     The Supreme Court has long recognized that marriage is a fundamental right and that choices about marriage, like choices about other aspects of family, are a central part of the liberty protected by the Due Process Clause.

88.     Kentucky law denies the Plaintiff couple and other same-sex couples this fundamental right by denying them access to the state-recognized institution of marriage and refusing to recognize the marriages they entered into in other states and countries.

89.     The Commonwealth can demonstrate no important interest to justify denying the Plaintiff couple this fundamental right. Indeed, it cannot demonstrate that the denial is tailored to any legitimate interest at all.

90.     The Commonwealth's prohibition of marriage between persons of the same sex and its refusal to recognize marriages entered into by same-sex couples in other jurisdictions violates the Due Process Clause.

91.     Defendants, acting under color of state law, are depriving Plaintiffs of rights secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.


**COUNT II:**

**Discrimination on the Basis of Sexual Orientation in**

**Violation of the Equal Protection Clause of the**

**Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

92.    Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

93.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall ...deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV,§ 1.

94.    By denying the Plaintiff couples and other lesbian and gay couples the ability to marry and to have their out-of-state marriages recognized, the Commonwealth, through Defendants, disadvantages lesbian and gay people on the basis of their sexual orientation. It denies them significant legal protections. And it "degrade[s] [and] demean[s]" them by "instruct[ing] ...all persons with whom same-sex couples interact, including their own children," that their relationship is "less worthy" than the relationships of others. *Windsor*, Slip Op., at 25.

95.    Same-sex couples and opposite-sex couples are similarly situated for purposes of marriage.

96.    The evidence will show that classifications based on sexual orientation demand heightened scrutiny.

97.    Lesbians and gay men are members of a discrete and insular minority that has suffered a history of discrimination in the Commonwealth and across the United States.

98.    Sexual orientation bears no relation to an individual's ability to perform or contribute to society.

99.    Sexual orientation is a core, defining trait that is so fundamental to one's identity that a person may not legitimately be required to abandon it (even if that were possible) as a condition of equal treatment. Sexual orientation generally is fixed at an early age and highly resistant to change through intervention. Efforts to change a person's sexual orientation through interventions by medical professionals have not been shown to be effective. No mainstream mental health professional organization approves interventions that attempt to change sexual orientation, and many —including the American Psychological Association and the American Psychiatric Association —have adopted policy statements cautioning professionals and the public about these treatments.

100.    Prejudice against lesbians and gay men continues to seriously curtail the operation of the political process preventing this group from obtaining redress through legislative means. Lesbians and gay men lack statutory protection against discrimination in employment, public

accommodations, and housing at the federal level and in more than half of the states, including Kentucky. Lesbians and gay men have far fewer civil rights protections at the state and federal level than women and racial minorities had when sex and race classifications-were declared to be suspect or quasi suspect. They have been stripped of the right to marry through 30 state constitutional amendments, and have been targeted through the voter initiative process more than any other group.

101.    For all these reasons, classification based on sexual orientation should be reviewed under heightened scrutiny, but this one cannot survive under any level of constitutional scrutiny The Commonwealth's exclusion of same-sex couples from marriage is not rationally related to any legitimate governmental interest. All it does it disparage and injure lesbian and gay couples and their children.

102.    The Commonwealth's prohibition of marriage for same-sex couples and its refusal to recognize the marriages of same-sex couples entered into elsewhere violates the Equal Protection Clause.

103.    Defendants, acting under color of state law, are depriving Plaintiffs of rights secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT III:

### Discrimination on the Basis of Sex in
### Violation of the Equal Protection Clause of the
### Fourteenth Amendment to the United States Constitution
### (42 U.S.C. § 1983)

104.  Plaintiffs incorporate by reference all of the preceding paragraphs of this Complaint as though fully set forth herein.

105.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "no State shall ...deny to any person within its jurisdiction the equal protection of the laws.'.' U.S. Const. amend. XIV, § 1.

106.    Commonwealth law defines marriage as " Only a marriage between one man and one woman shall be valid or recognized as a marriage in Kentucky." Kentucky Amendment 223A.

107.    By defining marriage in this way, the Commonwealth discriminates on the basis of sex. For example, Plaintiffs Greg and Michael are not permitted to marry in this Commonwealth solely because they are both men. If Michael (or Greg) were a woman, the marriage would be allowed. The only reason the marriage is prohibited is the sex of the partners.

108.    In addition, the Commonwealths has made KRS 402.045(1) which provides in part that, that, "A marriage between members of the same sex which occurs in another jurisdiction shall be void in Kentucky.  A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized." KRS 402.045(2) provides that "Any rights granted by virtue of the [same sex] marriage, or its termination, shall be unenforceable in Kentucky courts."

109.    The marriage of Jim and Luke, for example, is denied recognition solely because they are both men.

110.    The Supreme Court has made clear that perpetuation of traditional gender roles is not a legitimate government interest.

111.    Given that there are no longer legal distinctions between the duties of husbands and wives, there is no basis for the sex-based eligibility requirements for marriage.

112.    The Defendants can demonstrate no exceedingly persuasive justification for this discrimination based on sex.

113.    Commonwealth law prohibiting marriage and recognition of marriage for same-sex couples thus violates the Equal Protection Clause.

114.    Defendants, acting under color of state law, are depriving Plaintiffs of rights secured by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Enter a declaratory judgment that 223A Amendment to the Kentucky Constitution violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

2. Enter a declaratory judgment that KRS 402.045(2) and KRS 402.045 (1) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

3. Enter a permanent injunction enjoining Defendants from denying the Plaintiff couples and all other same-sex couples the right to marry in the Commonwealth of Kentucky and directing Defendants to recognize marriages validly entered into by the Plaintiff couples and other same-sex couples outside of the Commonwealth of Kentucky;

4. Award costs of suit, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

5. Enter all further relief to which Plaintiffs may be justly entitled.


Respectfully submitted this 16th day of August, 2013.


                                            FAUVER LAW OFFICE, PLLC

 _/s/ DAWN ELLIOTT                           _/s/ SHANNON FAUVER

Dawn Elliott                                Shannon Fauver

1752 Frankfort Ave.                         1752 Frankfort Ave.

Louisville, KY 40206                        Louisville, KY 40206

502.569.7710                                502-569-7710

*Counsel for Plaintiffs*                    *Counsel for Plaintiffs*