UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| **GREGORY BOURKE,** et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | CASE No. 3:13-CV-750 (JGH) |
| | ) | *Electronically filed* |
| **STEVE BESHEAR,** et al. | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |

---

## DEFENDANTS STEVE BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF KENTUCKY, AND JACK CONWAY, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF KENTUCKY'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

* * * *

Comes Defendant Steven L. Beshear, in his official capacity as Governor of Kentucky, and Defendant Jack Conway, in his official capacity as Attorney General of Kentucky, by counsel, and respond to Plaintiffs Gregory Bourke, et al.'s Motion for Summary Judgment.

### I.    Defendants Must Support the Kentucky Constitution

All Kentucky constitutional officers, including the Governor and Attorney General, take an oath to support the Kentucky Constitution.  KY. CONST. § 228.  Accordingly, constitutional officers are obligated, by virtue of their oath, to defend provisions of the Kentucky Constitution that are not otherwise in conflict with the United States Constitution.    To date, the United States Supreme Court has never held as unconstitutional any state constitutional provisions requiring marriage to be between members of the opposite sex.  As such, Defendants are required to discharge their oath to defend Section 233A of the Kentucky Constitution.  In accordance with

1

Section 256 of the Kentucky Constitution, Section 233A was passed by three-fifths of each chamber of the Kentucky Legislature and then ratified by the citizenry of Kentucky, by more than seventy-four percent vote of the electorate.  KY. CONST. § 256. As Section 233A was validly implemented by the procedure articulated in Section 256 of the Kentucky Constitution, and no precedent holds that Section 233A is in conflict with the United States Constitution, such is a valid exercise of the sovereign authority of the citizens of the Commonwealth of Kentucky. Governor Beshear and Attorney General Conway are thus required by oath to defend this provision of the Kentucky Constitution.

This Honorable Court must ultimately decide whether Kentucky's marriage law is consistent with the United States Constitution.  The Defendants recognize the changing environment of marriage jurisprudence throughout this country and defer to the Court's determination in the instant case.  Until such determination is made, Defendants must discharge their duty to defend the Kentucky Constitution.

## II.    Kentucky's Opposite-Sex Marriage Requirements Are Valid Exercises Of Its Sovereign Authority Over Marriage That Are Consistent With The Federal Constitution.

As the chief law officer of the Commonwealth, the Attorney General has the duty to defend both the law and the constitution. *Com. ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 867 (Ky. 1974). "Every provision in a constitution must be interpreted in the light of the entire document . . . and all constitutional provisions are of equal dignity and, if possible, should be construed in harmony with each other." *Tom v. Sutton*, 533 F.2d 1101, 1105-06 (9th Cir. 1976); *see also Legislative Research Com'n v. Fischer,* 366 S.W.3d 905, 913 (Ky. 2013). Thus courts have a duty to reasonably construe constitutional provisions together so as to harmonize them.

Rather than conflict with state constitutional provisions regarding marriage, *U.S. v. Windsor*, 133 S.Ct. 2675 (2013) expressly upheld a state's right to govern marital relations.

*Windsor* itself reaffirms that determinations of marriage are the province of the states, and not the federal government:

> State laws defining and regulating marriage, of course, must respect the constitutional rights of persons . . . but, subject to those guarantees, 'regulation of domestic relations" is "an area that has long been regarded as a virtually exclusive province of the States." . . . Consistent with this allocation of authority, the Federal Government, through our history, has deferred to state-law policy decisions with respect to domestic relations.

*Id.* at 2691. *Windsor* is expressly clear that determinations of marriage have been long regarded as an almost exclusive province of the states.

*Windsor* held that DOMA unconstitutionally impeded New York's ability to determine for itself whether to legitimize same-sex marriages. Thus *Windsor* held only that the federal government may not treat New York marriages differently than New York does. "The class to which DOMA directs its restrictions and restraints are those persons who are joined in same-sex marriages made lawful by the State . . . This opinion and its holding are confined to those lawful marriages." *Id.* at 2695-96. *Windsor* did not force a state to recognize marriages that it deemed invalid; it only forced the federal government to honor a state's determination of marriage.

*Windsor* expressly allows for the possibility that different states may reach different conclusions regarding the validity of marriages. "DOMA rejects the long-established precept that the incidents, benefits, and obligations of marriage are uniform for all married couples within each State, though they may vary, subject to constitutional guarantees, from one State to the next." *Id.* at 2692. *Windsor* treats the decision to recognize same-sex marriage as a sovereign determination by the people of a state. "In acting first to recognize and then to allow same-sex marriages, New York was responding 'to the initiative of those who [sought] a voice in shaping

the destiny of their own times' . . . These actions were without doubt a proper exercise of its

sovereign authority within our federal system." *Id.* In contrast to New York, Kentucky, through

the sovereign authority of its people, has elected not to recognize same-sex marriages by both

constitutional provision and statute, and nothing in *Windsor* expressly overturns the sovereign

determination of the people of Kentucky.


III.     **Kentucky's Opposite-Sex Marriage Requirements Do Not Violate Due Process Or
         Equal Protection.**

         Plaintiffs argue that Kentucky's opposite-sex marriage requirements violate the Due

Process Clause of the Fifth Amendment, and the Due Process and Equal Protection Clauses of

the Fourteenth Amendment.  Kentucky's opposite-sex requirements pass the rational basis test,

as the Commonwealth's public policy is rationally related to the legitimate government interest

of preserving the state's institution of traditional marriage. Strict scrutiny does not apply because

the Sixth Circuit has held that no fundamental right or suspect class is implicated under the

present circumstances.

         The standard of review for state action is the same for both the Due Process and Equal

Protection Clauses.[1] "Unless a statute provokes 'strict judicial scrutiny' because it interferes with

a 'fundamental right' or discriminates against a 'suspect class, it will ordinarily survive an equal

protection attack so long as the challenged classification is rationally related to a legitimate

governmental purpose." *Kadrmas v. Dickinson Public Schools*, 487 U.S. 450, 458 (1988). Under

the existing jurisprudence of the Sixth Circuit, same-sex marriage is not a fundamental right and

sexual orientation is not a suspect classification. "Homosexuality is not a suspect class in this

---

[1] "Although 'the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so
unjustifiable as to be violative of due process.'' Thus, if a federal statute is valid under the equal protection
component of the Fifth Amendment, it is perforce valid under the Due Process Clause of that Amendment." *U.S.
R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 174 n. 8 (1980).

circuit," *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2006), and it is not a suspect class in any other circuit except for one.[2] Accordingly, the rational basis standard of review applies.

Preserving the state's institution of traditional marriage is Kentucky's existing public policy and has been construed as a legitimate state interest. *Lawrence v. Texas*, 539 U.S. 558, 585 (2003) (O'Connor, J., concurring). *Windsor* recognized that same-sex marriage is not part of the traditional institution of marriage:

> It seems fair to conclude that, until recent years, many citizens had not even considered the possibility that two persons of the same sex might aspire to occupy the same status and dignity as that of a man and woman in lawful marriage. For marriage between a man and a woman no doubt had been thought of by most people as essential to the very definition of that term and to its role and function throughout the history of civilization.

*Windsor*, 133 S.Ct. at 2689. While *Windsor* went on to recognize that "the limitation of lawful marriage to heterosexual couples . . . came to be seen in New York and certain other States as an unjust exclusion," *id.*, the Kentucky Legislature has not recognized such a change. The people of Kentucky have chosen to affirm the institution of traditional marriage within Kentucky. Accordingly, since preserving the institution of traditional marriage is Kentucky's public policy, and the requirement that marriage be between opposite sex persons is rationally related to that interest, Kentucky marriage laws pass the rational basis test.

## IV. Kentucky's Marriage Laws Do Not Violate The Establishment Clause.

Plaintiffs make a further argument that Kentucky's opposite-sex marriage requirement violates the Establishment Clause, U.S. CONST. amend. I, which provides that Congress shall

---

[2] *See Cook v. Gates*, 528 F.3d 42, 61 (1st Cir. 2008); *Price-Cornelison v. Brooks,* 524 F.3d 1103, 114 (10th Cir. 2008); *Citizens for Equal Protection v. Bruning,* 455 F.3d 859, 866-67 (8th Cir. 2006); *Johnson v. Johnson,* 385 F.3d 503, 532 (5th Cir. 2004); *Lofton v. Sec'y of the Dep't of Children & Family Serv.*, 358 F.3d 804, 818 (11th Cir. 2004); *Schroeder v. Hamilton Sch. Dist.*, 282 F.3d 946, 950-51 (7th Cir. 2002); *Steffan v. Perry,* 41 F.3d 677, 684 n.3 (D.C. Cir. 1994); *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 573-74 (9th Cir. 1990); *Woodward v. United States,* 871 F.2d 1068, 1076 (Fed Cir. 1989); *but see Windsor v. U.S.,* 699 F.3d 169, 185 (2d Cir. 2012).

make no law respecting an establishment of religion." Plaintiffs argue that "the only argument offered in favor of the bill was the furtherance of the religious beliefs of the majority in the legislature." Pl.'s Mem., PageID # 351. However, "a statute primarily having a secular effect does not violate the Establishment Clause merely because it "happens to coincide or harmonize with the tenets of some or all religions.'" *Hernandez v. C.I.R.*, 490 U.S. 680, (1989). Plaintiff's argument is contradicted by quotations in their own motion, where they quote the sponsors of Kentucky's amendment prohibiting same-sex marriage as saying that "marriage joins together a man and a woman for the stability of society," and as promoting the "traditions of stable marriages and strong families." *Id.,* PageID # 335. And although it is undisputed that some of the bill's sponsors had religious motives, the religious beliefs of individual legislators are not controlling; the intent of the legislature is:

> Even if some legislators were motivated by a conviction that religious speech in particular was valuable and worthy of protection, that alone would not invalidate the Act, because what is relevant is the legislative purpose of the statute, not the possibly religious motives of the legislators who enacted the law.

*Board of Educ. of Westside Community Schools v. Mergens By and Through Mergens,* 496 U.S. 226, 249 (1990). Moreover, KY. CONST. § 233A is not just the will of a few legislators, but the will of the people of Kentucky, who ratified it as required by KY. CONST. §256. The intent of the legislature and the will of the people of Kentucky have both found that the requirement of opposite-sex marriage promotes traditional values of marriage.

The relevant sections of the Kentucky Constitution and statutes are consistent with the Establishment Clause test in *Lemon v. Kurtsman*, 403 U.S. 602 (1971). To be consistent with the Establishment Clause under the *Lemon* test, "first, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . finally, the statute must not foster 'an excessive government entanglement with

religion.'" *Id.* at 613. Kentucky's opposite-sex marriage requirements have the secular legislative purpose of protecting its definition of marriage, do not advance or inhibit any particular religion, and do not foster excessive government entanglement with religion. They merely express the state of Kentucky's sovereign right to regulate domestic relations, without regard to any particular religion. Accordingly, Kentucky's opposite-sex marriage requirements are consistent with the Establishment Clause.

**V.     Kentucky's Opposite-Sex Marriage Requirements Do Not Violate The First Amendment's Guarantee Of Freedom Of Association.**

Plaintiffs also argue that Kentucky's opposite-sex marriage requirements violate the First Amendment's guarantee of freedom of association. Pl.'s Mem., PageID #352-53. Plaintiffs cite absolutely no case law or authority where the guarantee of freedom of association has been found to extend to same-sex marriages. Accordingly, a state's sovereign power to regulate marriage and the precedents argued above govern, and Kentucky's opposite-sex marriage requirements should be found constitutional.

**VI.    The Full Faith And Credit Clause Does Not Require Recognition Of Marriages In Other States That Are Against Kentucky Public Policy.**

Plaintiffs argue that Kentucky's opposite-sex marriage requirements and § 2 of DOMA violate the Full Faith and Credit Clause in that Kentucky's does not recognize same-sex marriages from other jurisdictions, and § 2 of DOMA does not require a state to do so. The Full Faith and Credit Clause, U.S. CONST. art. IV, § 1, provides that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state." However, "the full faith and credit clause is not an inexorable and unqualified command. It leaves some scope for state control within its borders of affairs which are peculiarly its own." *Pink v. A.A.A. Highway Exp.*, 314 U.S. 201, 210 (1941). As argued above, the states are

7

individually sovereign with respect to determinations of marriage. Further, "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Nevada v. Hall*, 440 U.S. 410, 422 (1970). Kentucky has expressed a legitimate public policy in requiring opposite-sex marriage, and cannot be required to follow decisions of other states in violation of it. Also, "the Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 232 (1998). Kentucky has sovereign authority to regulate the effect of marriages within its borders, and the Full Faith and Credit Clause does not impinge upon that right to require Kentucky to recognize same-sex marriages against the express public policy of its citizenry.

Similarly, § 2 of DOMA, codified at 28 U.S.C. 1738C,  provides that "no State . . . shall be required to give effect to any public act, record, or judicial proceeding of any other State . . . respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State." DOMA § 2 just makes express what is already implied, that the Full Faith and Credit Clause does not require states that do not recognize same-sex marriage to recognize same-sex marriages in other states. Accordingly, Kentucky's opposite-sex marriage requirements and § 2 of DOMA do not violate the Full Faith and Credit Clause.

**VII.    Conclusion**

For the foregoing reasons, Defendants ask that Plaintiffs' Motion for Summary Judgment be denied.

Respectfully Submitted,

/s/ Brian T. Judy

**Brian T. Judy**
Assistant Attorney General
Office of the Attorney General
700 Capital Ave. Suite 118
Frankfort, KY  40601
502-696-5300
COUNSEL FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING</u>

I hereby certify that on January 13th, 2014, the foregoing was filed with the clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to all parties.


<u>/s/ Brian T. Judy</u>
**Brian T. Judy**

10