IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

*ELECTRONICALLY FILED*

| | |
|---|---|
| TIMOTHY LOVE, ET AL.           ) | |
| )                                | |
| PLAINTIFFS                   ) | |
| )                                | CIVIL ACTION NO. |
| v.                               ) | |
| )                                | 3:13-CV-750-JGH |
| STEVE BESHEAR, ET AL.        ) | |
| )                                | |
| DEFENDANT                    ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

The State asserts that its discriminatory marriage laws pass constitutional muster because prohibiting same-sex marriage furthers its interest in encouraging procreation. The State's argument is a creative spin on an argument already rejected by this Court in its prior Opinion and Order, DN 47. While the proffered justification carefully avoids many constitutional landmines (tradition, religion, moral condemnation), it does so at the expense of one of our most distinguishing human traits: rationality. Same-sex marriage is not related to heterosexual procreation. Moreover, it is not r*ational* to conclude that heterosexual procreation is in any way affected by the state's refusal to recognize the marriages of same-sex couples.

    **I.**    **Defendant's Argument Has Already Been Rejected by this Court**

This Court has previously recognized that the procreation justification for marriage discrimination "has failed rational basis review in every court to consider [it] post-*Windsor*, and

most courts pre-*Windsor*."[1] It went on to hold that, "The exclusion of same-sex couples on procreation grounds makes just as little sense as excluding post-menopausal couples or infertile couples on procreation grounds."[2] The Court went on to consider every justification for the State's discrimination against same-sex couples, and could not conceive of one that could pass rational basis review. This is the law of the case.

The law of the case doctrine holds that findings made at one stage of litigation will be the law governing decisions at subsequent stages of the same litigation.[3] "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case."[4] Although the doctrine does not bar the court from reconsidering prior decisions, such reconsideration should be restricted to cases (1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice.[5]

There is no reason for the Court to depart from its previous pronouncement that the procreation justification makes "little sense." The State has offered no new evidence to support its argument, there has not been any holding in any federal court that would call into question this Court's prior decision (quite the contrary, in fact), and the state will suffer no injustice by the Court's consistency on this issue.

---

[1] Memorandum Opinion, DN 47, Pg ID 738.
[2] *Id.*
[3] *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002); *United States v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994);
[4] *Coal Resources, Inc. v. Gulf & W. Industries, Inc.*, 865 F.2d 761, 766 (6th Cir. 1989) (opinion amended on denial of reh'g sub nom.*Coal Resources, Inc., No. 11 v. Gulf & W. Industries, Inc.*, 877 F.2d 5 (6th Cir. 1989)) (citations omitted).
[5] *McKenzie v. BellSouth Telecommunications, Inc.,* 219 F.3d 508, 513 n. 3 (6th Cir.2000) (citing *Hanover Ins. Co. v. American Eng'g Co.,* 105 F.3d 306, 312 (6th Cir.1997)) (quoting *Petition of U.S. Steel Corp.,* 479 F.2d 489, 493 (6th Cir.1973)).

## II.      Procreation Is Not A Legitimate State Interest

Procreation is of dubious legitimacy in terms of the interests of the State. Defendant's argument that Kentucky has a legitimate interest in procreation is an argument that Kentucky has an interest in the private sexual and familial decisions of its individual citizens. This government interest in the intimate decisions of its residents raises serious privacy concerns for the citizens of the Commonwealth.

The State, however, persists in its procreation argument. Defendant makes the following summary declaration:

> Encouraging, promoting, and supporting the formation of relationships that have the natural ability to procreate furthers the Commonwealth's fundamental interest in ensuring humanity's continued existence.[6]

The very existence of humanity, according to Defendant, is the pressing business of Kentucky's legislature.

Defendant cites only to *Skinner v. State of Okl. ex rel. Williamson*,[7] as authority for the proposition that procreation is "fundamental to the very existence and survival of the race" and should therefore be considered a legitimate state interest.[8] This *post-hoc* justification for Kentucky's marriage ban finds no support in the language of the laws themselves, which are completely silent on procreation matters. Furthermore, none of the testimony offered by Kentucky Senators prior to the adoption of Amendment 233A makes any reference at all to procreation.[9]

---

[6] DN 87 PageID #1232.
[7] 316 U.S. 535, 541 (1942).
[8] *Id.* at 28.
[9] Those records show the state was motivated reference only religious tradition, the sovereign majority, and the sinister specter of "judicial activism."

The intimate physical and emotional relationships that accompany decisions on whether and when to have children is protected from government intrusion by a general right to privacy under the Bill of Rights.[10] Matters "involving the most intimate personal choices a person may make in a lifetime, choices central to personal dignity and autonomy" especially procreation, are "central to the liberty protected by the Fourteenth Amendment."[11] And "the right to make certain decisions regarding sexual conduct extends beyond the marital relationship."[12] The Supreme Court has repeatedly declared that these decisions should be free of government interference. Appellant cites only to *Skinner* as the basis for this alleged interest, but *Skinner* specifically restricted the state's power to interfere in matters of procreation by striking down Oklahoma's use of sterilization to punish "habitual criminals."[13] Not even in the prominent cases involving abortion or contraception has the Supreme Court acknowledged any general state interest in promoting procreation.[14]

To fill the gap in its legal authority, Defendant cites the pro-birth policies of Japan and France. The government of Japan has set aside considerable funds "for birthrate-boosting programs...which included consultations and marriage information for singles."[15] France is covering child-care costs, giving tax deductions, and providing discounts for transportation.[16] The comparison is inapt. The generous provision of childcare benefits and marriage

---

[10] *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965).
[11] *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 851 (1992).
[12] *Lawrence*, 539 U.S. at 565, citing *Eisenstadt v. Baird*, 405 U.S. 438 (1972).
[13] 316 U.S. at 536.
[14] *See, Roe v. Wade*, 410 U.S. 113, 147-150 (1973), *Planned Parenthood v. Danforth*, 428 U.S. 52 (1976), *Planned Parenthood v. Casey*, 505 U.S. 833 (1992), *Griswold v. Connecticut*, 381 U.S. 479 (1965), and *Eisenstadt v. Baird*, 405 U.S. 438 (1972).
[15] Def. Response, DN 87 PageID # 1233.
[16] *Id.*

"consultations" in other countries cannot be conflated with Kentucky's laws *excluding* citizens – of whom many have children – from the benefits of marriage.[17]

Defendant's reliance on the benevolent programs in France and Japan invites a look at the less benign consequences of a state's interest in procreation. Procreation was of great concern when China implemented its one-child policy. Fascist interests in procreation resulted in its infamous eugenics programs in the first half of the twentieth century. Tribal governments throughout North and West Africa use their interest in procreation to perpetuate forced marriages of young girls. The notion that the State has an interest in procreation is repulsive to the autonomy embodied in our Constitution. The *Skinner* Court itself was wary of what might happen should the state's power fall into "evil or reckless hands[.] . . ."[18]

### III. Banning Same-Sex Couples from the State's Marriage System Is Not Rationally Related to Promoting Procreation

Even if Kentucky were to have a legitimate interest in private, procreative decision-making, the rational basis standard is not so low that any justification, however disjointed, will suffice. Defendant must do more than simply articulate a legitimate governmental purpose, he must also demonstrate that there is an actual relationship between that purpose and the disparity of treatment, and that those relationships bear some rational connection to each other. Courts must "insist on knowing the relation between the classification adopted and the object to be obtained."[19] Defendant, however, merely articulates an interest in procreation and leaves it at that. Missing is any explanation of how Kentucky's refusal to include same-sex couples in its

---

[17] Defendant fails to acknowledge that same-sex marriage is legal in France.
[18] 316 U.S. 535 at 541.
[19] *Romer v. Evans*, 517 U.S. at 632.

marital scheme actually furthers any interest in promoting, encouraging, or supporting "the formation of relationships that have the natural ability to procreate."

His silence on this essential link not an oversight. It is a tacit acknowledgement that the relationship between the two is beyond tenuous; it is nonexistent. Defendant does not explain how denying same-sex couples entry into Kentucky's marital scheme promotes opposite-sex procreation because he cannot. Prohibiting farmers from growing tomatoes in greenhouses does not increase the yield of farmers growing tomatoes in the field. Even if the Court agrees that promoting procreation among opposite-sex couples is a legitimate state interest, and also agrees that allowing opposite-sex couples to marry furthers that legitimate state interest in a rational way, there is no reason to conclude that excluding same-sex couples from that institution furthers that interest. Kentucky "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."[20] The State has no evidence to support this supposition. It cannot point to a single statistic or study that would indicate even a single birth attributable to the ban on same-sex marriage. Plaintiffs are at a slight disadvantage in arguing this point because the link is apparently so attenuated that no one has ever thought to do a study on the effects of same-sex marriage bans on birth rates. What we do know is that Kentucky's birth rate, along with the nation's, has been in steady decline. According to census data available through the Kentucky State Data Center, the birth rate dropped significantly in the mid-1960s and has slowly been declining since.[21] Throughout this period same-sex couples were precluded from marrying in Kentucky. And yet this discrimination has done nothing to stop the decline.

---

[20] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985).
[21] Exhibit 1: Birth tables downloaded from http://ksdc.louisville.edu/index.php/kentucky-demographic-data/births-and-deaths (accessed May 28, 2014).

The rationality of Defendant's argument is not its only flaw. Despite Defendant's summary protest, the State's position is that it could permissibly exclude anyone who is unable or unwilling to bear children, not just same-sex couples. Just as couples do not need the State's marital institution in order to procreate, the marital institution itself does not need procreation to exist. The U.S. Supreme Court has long acknowledged that marriage is a societal institution that is concerned with more than simply childrearing. In *Griswold*, the Court explained:

> Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony of living, not political faiths; a bilateral loyalty, *not commercial or social projects*.[22]

In *Turner v. Safley*, the Supreme Court identified "many important attributes of marriage" beyond procreation, including emotional support, public commitment, personal dedication, exercise of religious faith, and the receipt of government benefits.[23] Marriage is far more than mere procreation. To reduce state approval to only those relationships which can "naturally procreate" is truly demeaning to all loving couples, including opposite-sex couples who cannot or choose not to have children.[24]

---

[22] 381 U.S. at 486 (emphasis added).
[23] 482 U.S. 78, 95-96 (1987).
[24] Defendant repeatedly distinguishes "natural" procreation from unnamed alternative methods. Never does Defendant admit that many same-sex couples have children through a variety of ways (including "natural" procreation in previous relationships, or through surrogates, or through in vitro methods). The only method of procreation of any interest to Defendant is man-woman sexual intercourse. By implication, that is the only legitimate method of reproduction in the eyes of the Commonwealth of Kentucky. All other methods are suspect and not worthy of state benefits.

### IV. Conclusion

The Court's analysis in its previous opinion is sound. Kentucky's systematic discrimination against same-sex couples violates the Constitutional guarantee of equal protection under the law. While the class of the plaintiffs and the fundamental rights at issue suggest that heightened scrutiny should apply, the laws fail even rational basis review. The Court should grant Plaintiffs' motion and grant immediate injunctive relief.

Respectfully submitted,

| | |
|---|---|
| Shannon Fauver | /s/ Laura E. Landenwich |
| Dawn Elliott | Laura E. Landenwich |
| FAUVER LAW OFFICE PLLC | Daniel J. Canon |
| 1752 Frankfort Avenue | L. Joe Dunman |
| Louisville, KY 40206 | CLAY DANIEL WALTON & ADAMS PLC |
| (502) 569-7710 | 101 Meidinger Tower |
| *Co-counsel for Plaintiffs* | 462 South Fourth Street |
| | Louisville, KY 40202 |
| | (502) 561-2005 – phone |
| | (502) 415-7505 - fax |
| | laura@justiceky.com |
| | dan@justiceky.com |
| | joe@justiceky.com |
| | *Co-Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

      I hereby certify that on May 28, 2014 I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties having entered their appearance in this case.

                                                  /s/ Laura E. Landenwich