## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **GREGORY BOURKE, et al.** ) | |
| **Plaintiffs** ) | |
| **and** ) | |
| ) | |
| **TIMOTHY LOVE, et al.** ) | **CASE No. 3:13-CV-750 (CRS)** |
| **Intervening Plaintiffs** ) | |
| **v.** ) | |
| ) | *Electronically filed* |
| **STEVE BESHEAR, in his official** ) | |
| **capacity as Governor of Kentucky, et al.** ) | |
| **Defendants** ) | |

_____

### RESPONSE TO PLAINTIFFS' SECOND MOTION FOR ATTORNEYS' FEES AND COSTS ON BEHALF OF DEFENDANT STEVEN L. BESHEAR, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF KENTUCKY

Comes Defendant Steven L. Beshear, in his official capacity as Governor of Kentucky ("Governor Beshear"), by counsel, and for his Response to Plaintiffs' Second Motion for Attorneys Fees [Doc. No. 105-1] states as follows:

### INTRODUCTION

The plaintiffs have outlined the procedural history of this case from the initial filing of the *Bourke* Complaint on July 26, 2013, the *Love* Intervening Complaint, the district court summary judgments in the plaintiffs' favor, the Sixth Circuit Court of Appeals reversal, to the ultimate decision rendered in their favor by the Supreme Court of the United States. This case, along with companion cases from Michigan, Ohio and Tennessee[1] ("Companion Cases") was decided in a consolidated opinion on June 26, 2015 in *Obergefell v. Hodges*, 135 S.Ct. 2585 (2015). The plaintiffs describe

_____

[1] *Deboer v. Snyder*, No. 14-571 (Michigan case); *Obergefell v. Hodges*, No. 14-556 (Ohio case); *Tanco v. Haslam,* No. 14-562 (Tennessee case).

their efforts following the Sixth Circuit's decision as "an intense – and truly unprecedented – period of coordination and preparation by and among [their] attorneys, attorneys representing plaintiffs in Ohio, Michigan, and Tennessee, national civil rights organizations, and legal scholars." [Memorandum  at p. 5, Page ID 1529]. Unprecedented indeed.  The attorney fees bills submitted in three of the four Companion Cases total a staggering $5,728,136.24:  $2,091,297.34 (including a 75% enhancement request) from the Kentucky plaintiffs; $1,915,585 from the Michigan plaintiffs (not including an unidentified enhancement request)[2]; and $1,721,253.90 (including a 50% enhancement request) from the Ohio plaintiffs.[3]  And the Tennessee plaintiffs have yet to file their motion.  The combined ACLU attorney fees in this case and in the companion Ohio case alone total $404,313, which does not include their expenses or the requested enhancement in each case.[4]

Congress made an exception in civil rights litigation to the general rule that each party must pay its own attorney fees and expenses to ensure "effective access to the judicial process" for persons with civil rights grievances.  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).  Many of the fees requested by the plaintiffs in this case

---

[2]     See Plaintiffs' Motion for Taxable Costs and Attorney Fees [Doc. No. 180] and Amended Declaration [Doc. No. 182] in *Deboer v. Snyder*, United State District Court Eastern District of Michigan, Case No. 12-CV-10285.  The motion was filed on July 27, 2015 and is currently pending.

[3]     See Plaintiffs' Substitute Motion for Attorney Fees and Expenses and Memorandum in Support [Doc. No. 87].  The motion was filed on September 11, 2015 and remains pending.

[4]     The ACLU attorneys seek the following fees in the two companion cases:

|                | OHIO      | KENTUCKY  |
|----------------|-----------|-----------|
| James Esseks   | $111,370  | $144,830  |
| Chase Strangio | $ 83,655  | $ 31,330  |
| Joshua Block   | $197,389  | $ 30,764  |

result from overstaffing, duplication and inefficiencies.  As set forth below, an award of $2,091,297.34 is excessive and clearly unnecessary to ensure "effective access to the judicial process." The defendant objects to the total amount of the requested fees and asks that they be reduced to a reasonable amount.

### STANDARD OF REVIEW

The Civil Rights Attorneys' Fee Awards Act of 1976 provides that a "court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorneys fee as part of the costs."  42 U.S.C. § 1988(b).  If awarded, the recovery must be tempered in a way "that is 'adequate to attract competent counsel,' but" that does "not produce windfalls to attorneys."  *Blum v. Stenson*, 465 U.S. 886, 897 (1984). See *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004). "[C]ourts must remember that they do not have a mandate ... to make the prevailing counsel rich." *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999).

The Supreme Court has established a guideline for examining fee requests under the Act.  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley*, 461 U.S. at 433.  This "lodestar" calculation provides "an objective basis on which to make an initial estimate of the value of the lawyer's services."  *Id.*  Applied correctly, this method should result in an award "that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). Courts are charged with the responsibility of excluding any hours that are "excessive,

redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.   When submitting fee requests attorneys should exercise billing judgment so that "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority." *Id.*

## ARGUMENT

The plaintiffs have submitted time billing entries for nine attorneys, totaling $1,125,929.   As such a large figure would suggest, the individual billing entries are extensive.   Where the number of entries of the challenged items is relatively few – less than 20 – the line items are set forth within the body of this Response.   Where the challenged fees exceed 20 line items, copies of the billing entries are attached as an exhibit with the challenged entries highlighted and the basis for the challenge set forth in the memorandum.

The majority of the challenged fees are for the time period after the petition for certiorari was filed in the Supreme Court.   Until that time the case had been handled by the attorneys who filed the Complaint and Amended Complaint:   Dan Canon, Laura Landenwich and Joe Dunman from the Clay Daniel Walton and Adams, PLLC firm and Dawn Elliott and Shannon Fauver from the Fauver Law Office, PLLC firm. No challenge is made to the  decision to associate with experienced counsel.   The challenge is to the overstaffing, inefficiencies, and duplication, after the association, which has resulted in an unreasonable fee request exceeding $2 million.

**A.    The litigation was significantly overstaffed after experienced Supreme Court litigators were retained.**

What stands out most predominantly from the billing entries of the nine attorneys in this case is the overstaffing after the local attorneys filed the brief in

support of their petition for writ of certiorari and affiliated with experienced Supreme Court counsel.

1.      **The plaintiffs retained experienced Supreme Court counsel.**

The plaintiffs' motion represents that this matter was handled by the local law offices of Clay Daniel Walton Adams and the Fauver Law Office "until it became professionally unreasonable to continue to do so." [Memorandum at p. 14]. Based upon the time entries and supporting declaration, this occurred in late December and after the petition for writ of certiorari was filed. At that time, the plaintiffs retained the services of Professor Jeffery L. Fisher, a professor at Stanford Law School and Co-Director of the Stanford Law School Supreme Court Litigation Clinic, and the ACLU.

Professor Fisher offered the advantage of the services of the Stanford Supreme Court Litigation Clinic. According to Fisher's declaration, his fees do not include the "dozens of extra hours spent strategizing and reflecting with the students, as well as hundreds of hours of the students' own time spent helping [him] craft and edit the briefs and researching various legal issues." [Doc 107-1 at ¶ 6]. Fisher also reports that Professor Brian Wolfman, his colleague who is reported on Georgetown Law's website as Co-Director of the Institute for Public Representation, Visiting Professor of Law, contributed twenty-five hours of his time "reviewing, discussing, and making editing suggestions to various drafts." (No fees have been sought for Professor Wolfman's services.) [Doc. 107-1 at ¶ 6]. Likewise, affiliation with the ACLU provided access to the experience of attorneys well-steeped in the same-sex marriage

cases. While the ACLU has sought reimbursement for three attorneys who reportedly provided considerable in consultation on this case, it has not sought reimbursement for several other attorneys who reportedly provided considerable consideration time in consultation on this case. See Esseks Declaration at ¶ 19.

Rather than creating efficiencies by using these experienced Supreme Court practitioners, however, the affiliation created duplication, inefficiencies, overstaffing and a resulting claim for unreasonable attorney fees.

### 2. Using nine attorneys to prepare the Supreme Court briefs was not necessary.

Despite Professor Fisher's expertise and experience as a Supreme Court litigator, support from the Stanford Supreme Court Litigation Clinic and his colleagues, plaintiffs have submitted time entries for **eight additional attorneys** related to drafting, reviewing, editing and conferring in production of three briefs filed in the Supreme Court: Petition for Certiorari Reply Brief, Merits Brief, and Reply Brief. The total amount claimed for finalizing these three briefs exceeds $300,000.00. [See entries in Exhibit 1]. The overstaffing for preparing these briefs is wholly unreasonable.

The Opinion and Order from the Northern District of Oklahoma in *Bishop v. Smith*, No. 4:04-cv00848, another same-sex marriage case, addressed the same issue with over-staffing after the retention of a Supreme Court expert to assist with the appeal. [Copy attached at Exhibit 2]. That case wound its way through the district court, the Tenth Circuit Court of Appeals and to the Supreme Court on a petition for writ of certiorari and back to the district court on a fee petition to the successful plaintiffs. As in this case, the plaintiffs associated with a law school professor to

assist them with the appeal.   The retained professor, from the University of Oklahoma, College of Law, was a former law clerk for the United States Tenth Circuit Court of Appeals as well as the Supreme Court of the United States.   The defendant challenged the association as unnecessary, but the trial court found the association to be reasonable.

What the court found to be unreasonable, however, was that the original attorneys "spent excessive time on briefing after [Professor] Thai's addition to the team."   [Opinion and Order at p. 24].   The objectionable excessive billing on the briefing included time for reviewing, revising, editing, conferencing and finalizing the brief by two additional attorneys.   There, the court found the "three-person review process to be excessive" and reduced the hours submitted by the original attorneys accordingly.   *Id.*

In this case, the plaintiffs have submitted brief drafting, reviewing, revising, editing, conferencing and finalizing for ***eight lawyers*** after Professor Fisher's addition to the team, or a nearly threefold increase beyond what the *Bishop* court found excessive.   Even if Fisher did not have the task of writing every portion of the Supreme Court pleadings, the billing records still demonstrate an extraordinary amount of time for editing, revising, drafting and conferencing by other attorneys. The plaintiffs have not demonstrated that using nine attorneys was reasonable.

It should also be noted that although plaintiffs describe the issues as new and novel, the issues had been extensively briefed not only in this case at the district court and Sixth Circuit, but in the Companion Cases.   Further, the Sixth Circuit was not a stand-alone case.   There were district courts throughout the country who had written

extensive opinions on the relevant issues, as had the Fourth, Seventh, and Tenth Circuits.  While one theory had not emerged as the basis for decisions, many theories and positions presented in the pleadings and arguments had been developed through the extensive efforts of other courts and counsel.

Further, those cases were well-staffed on the plaintiffs' side with constitutional scholars such as former United States Solicitor General Theodore Olsen.  He represented the same-sex plaintiffs in successful arguments at the Fourth Circuit Court of Appeals in *Bostic v. Schaefer*, 760 F.3d 352, 368 (4th Cir.), *cert. denied sub nom. Rainey v. Bostic*, 135 S. Ct. 286, 190 L. Ed. 2d 140 (2014), *cert. denied,* 135 S. Ct. 308, 190 L. Ed. 2d 140 (2014), *cert. denied sub nom., McQuigg v. Bostic*, 135 S. Ct. 314, 190 L. Ed. 2d 140 (2014).

In other words, before this case arrived at the Supreme Court, some of the most highly regarded attorneys in the country had briefed the same issues presented in this case.  In fact, Professor Fisher was counsel of record at the Supreme Court in *Smith v. Bishop*, ____ U.S.L.W. ____ (U.S. No. 14-136) (Oct. 6, 2014), on behalf of the same-sex plaintiffs in their brief in opposition to the state defendant's petition for certiorari from the Tenth Circuit Court of Appeals decision in *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014).  Likewise, James Esseks states in his declaration that he has been counsel in numerous constitutional cases about the freedom to marry for same-sex couples, including *United States v. Windsor*, 133 S.Ct. 2675 (2013); *Baskin v. Bogan,* 766 F.3d 648 (7th Cir. 2014), and 11 additional lower court state and federal cases. Therefore, the fundamental constitutional issues presented in the Supreme Court

briefings were not particularly new or novel so as to justify the use of nine attorneys on the briefing.

The Supreme Court has cautioned attorneys in statutory fee shifting cases to exercise billing judgment when submitting fee requests:

> The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. . . . The district court . . . should [then] exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment," is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Hensley,* 461 U.S. at 433-34 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980)(en banc)(emphasis in original)).

Given the amount of time that Professor Fisher spent preparing the Supreme Court pleadings, the available support from the Stanford Supreme Court Litigation Clinic, the assistance of his colleague and law students, and his prior work on the *Bishop* case, the additional 391 hours and corresponding fees of $173,695 submitted by **eight additional attorneys** for brief drafting, reviewing, editing, and conferences regarding the brief clearly resulted from overstaffing and is not reasonable. In further support that the case was overstaffed, James Esseks with the ACLU Foundation states in his declaration that four other ACLU lawyers "devoted on this litigation" "well over" a collective 310 hours" "on the marriage cases at the Supreme Court." [Doc. No. 105-3 at ¶19]. Presumably, that includes time spent on the Supreme Court briefs in this case.

Exhibit 1 contains entries of the hours charged by the nine attorneys associated with the drafting, editing, and consultations in finalizing these three Supreme Court briefs, including Fisher's.  The highlighted entries in yellow are challenged.  None of Professor Fisher's hours have been challenged because he was the primary drafter and the scholar with the expertise to prepare the pleadings.  Likewise, entries from other attorneys that appear to be for original drafting of the pleadings have not been challenged.  Credit has also been provided for local counsel to review Professor Fisher's pleadings to keep advised of the status of the pleadings and to ensure accuracy of the factual history and proceedings of which Fisher would not have been aware.  No challenge has been made to preparation of the Joint Appendix.  The time entries identified in Exhibit 1 are challenged on the basis of overstaffing, duplication, unnecessary and inefficiency.  The following chart summarizes the challenged hours:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Canon/Landenwich | 9.9 | $300 | $29,070.00 |
| Joe Dunman | 16.75 | $250 | $4,187.50 |
| Fauver/Elliott | 274.4 | $250 | $68,600.00 |
| ACLU - Esseks | 58.9 | $700 | $41,230.00 |
| ACLU - Strangio | 35.9 | $325 | $11,667.50 |
| ACLU - Block | 47.35 | $400 | $18,940.00 |
| **TOTAL** | **390.95** | | **$173,695.00** |

Based upon these calculations, $173,695.00 should be deemed unreasonable fees.

**3.     Charging for an excessive number of attorneys to be in Washington, D.C., the week of arguments, and attend the Supreme Court arguments is not reasonable.**

Oral arguments at the Supreme Court were held Tuesday, April 28, 2015. Billing entries for six attorneys and one paralegal (from the Fauver firm) have been submitted for being in Washington, D.C., for as much as seven days during the week

of the arguments.  The entries include charges for events ranging from "Attend FTM Reception" to "media appearance," to "attend Solicitor General moot," and on the Saturday before the arguments 16 hours for "continued availability for all teams, planning and coordination in DC, etc."  Entries for the day of the Supreme Court arguments include entries for:  "coordinate client and counsel traffic patterns and media appearances"; "dinner meeting"; "prepare for return trip" and "meet with clients and counsel at ACLU HQ."

None of the attorneys who submitted time entries in this case argued before the Supreme Court on April 28, 2015.  It is understandable that every attorney associated with the case - as well as the Fauver paralegal - would <u>want</u> to attend the historical arguments and be in Washington, D.C., for the press conferences, media opportunities, other events and experience the general excitement surrounding the case.  It would also be reasonable to charge a client for one or two attorneys representing Kentucky to be present at the moot courts for the benefit of the oralists who were preparing to argue Issue 1 and Issue 2 to answer Kentucky-specific questions.  It is not reasonable, however, that six attorneys and a paralegal have submitted time entries and expenses to spend a week in Washington, D.C., from the time period April 21 to April 30.  Expenses associated with over-staffing, "dinner meetings," coordinating media efforts, and generally being "available to all teams" would not be billed to a client and should not be billed to the Commonwealth.  If there was any billing judgment used in the fees for attending the Supreme Court arguments, preparatory events, and celebrations, they are not evidenced in the billing records.  The time entries associated with the overstaffing, inefficiencies, and

unrelated services for the time period April 21 to April 30 are highlighted in Exhibit 3.

A summary of the challenged fees is set forth in the following chart:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Esseks | 28.9 | $700 | $20,230 |
| Canon/Landenwich | 67 | 300 | $20,100 |
| Dunman | 45.8 | $250 | $11,450 |
| Fauver/Elliott | 77 | $250 | $19,250 |
| Fauver Paralegal | 35 | 80 | $ 2,800 |
| | **260.9** | | **$73,830** |

**B.      Charging for the local attorneys to travel to California to meet with Professor Fisher and his students is not reasonable.**

Based upon the time records, attorneys Dan Canon, Laura Landenwich, Dawn Fauver, Shannon Elliott, and Joe Dunman traveled to California with "clients" to meet with Professor Fisher and his law students at the Stanford Supreme Court Litigation Clinic from April 16, 2015 to April 17, 2015, less than two weeks before the Supreme Court oral argument and days before filing the plaintiffs' final brief in the Supreme Court on April 20.    The purpose of the trip is not explained in the entries or the attorney declarations.    The following time entries are challenged based upon unnecessary expenses and overstaffing:

| Date | Attorney | Description of services | Hours | Amount |
|---|---|---|---|---|
| 3-1-15 | Landenwich | Correspondence with client re Stanford trip | .3 | $60 |
| 4-12-15 | Dunman | Meeting with clients re travel to CA | .75 | $187.5 |
| 4-14-15 | Canon | **Finalize Stanford travel;**[5] review reply brief; team call (KY), TC w TN re:seating arrangements; corresp w clients; coordinate Howard moot | 4.9 *(1.0) | $300 |

---

[5]      This block billing entry and those in the chart below related to media expenses provide clear examples of the challenges created by using block billing to support fee recovery motions. It is neither the opposing party's nor the Court's responsibility to sift and winnow through combined descriptions to determine fee recoverability.  Notwithstanding this failure, for specific fee objections, an effort has been made to quantify the time spent on the specific objectionable item, such as travel, media, overstaffing, etc.  The amount of the estimated time is set forth in the charts in parenthesis below the block billed entry.  Only the estimated amount has been included

| 4-15-15 | Canon | Travel to CA; meetings with clients and co-counsel | 12 | $3,600 |
|---------|-------|--------------------------------------------------|-----|--------|
| 4-15-15 | Dunman | Travel to San Francisco, meetings with clients and Stanford counsel | 12 | $3,000 |
| 4-15-15 | Landenwich | Review additional brief revisions; correspondence re same; correspondence re seating; **travel to Stanford** | 7.9 | $2,370 |
| 4-15-15 | Elliott and Fauver | Editing brief, reviewing briefs, confer with co-counsel, travel to Stanford, meet with clients, 13 hours each | 26 | $6,500 |
| 4-16-16 | Canon | Travel to SDF from SFO; meet with clients & co-counsel; continued TC with Hickman etc re seating | 12 | $3,600 |
| 4-16-15 | Landenwich | Meetings with co-counsel and clients (Stanford) | 8 | $2,400 |
| 4-16-15 | Dunman | Meetings with clients and co-counsel at Stanford; meeting with amicus Morrison | 11 | $2,750 |
| 4-16-15 | Elliott and Fauver | Meet with legal team in Stanford, meet with clients, talk to co-counsel, 10 hours each | 20 | $5,000 |
| 4-17-15 | Canon | Meet w clients & co-counsel at Stanford U; speak with amicus (Morrison); meet with all students in SLS and JLF. | 12 | $3,600 |
| 4-17-15 | Landenwich | Travel back to Louisville | 6 | $1,800 |
| 4-17-15 | Elliott and Fauver | Travel back from Stanford, discuss case with co-counsel and clients, final review of brief prior to filing, 14 hours each | 28 | $7,000 |
| 4-17-15 | Dunman | Final CA meetings with Stanford counsel and clients, travel to Louisville | 13 | $3,350 |
| 4-18-15 | Canon | Compile notes from Stanford visit; continued conversations with MB and SH | 1 | $300 |
| | | **TOTAL FEES** | **107.95 hrs** | **$45,817.50** |

\*  See footnote 5.

The purpose of the meetings is simply not clear from the billing entries, the attorney declaration, or the motion, and the request should be denied on that basis alone. Even if there were a justifiable basis to incur the fees, using five attorneys would not be reasonable.  Further, in today's digital age with Skype, Face Time, and conference call capability, there can be little justification to incur the travel time and expense associated with a trip to California for five attorneys.  Just as these attorneys

---

in the total hour calculation.    As set forth in Section G below, the defendant makes a separate requested recovery reduction based upon the high frequency of block billing and the consequential inability to determine the reasonableness of a large portion of the submitted entries.

would have to justify incurring these expenses to a paying client, so should they be required to justify the expenses here.  These fees should be denied.

**C.    Charges related to the resolving the conflict and "impasse" between the attorneys in the various states regarding who would present arguments should not be charged to the Commonwealth.**

The Supreme Court certified two issues when it granted the petition for certiorari:  Issue 1: Does the Fourteenth Amendment require a state to license a marriage between two people of the same sex; and Issue 2: Does the Fourteenth Amendment require a state to recognize a marriage between two people of the same sex when their marriage was lawfully licensed and performed out of state?   The Kentucky and Michigan cases involved Issue 1.  The Kentucky, Ohio and Tennessee cases involved Issue 2.  Only the Kentucky case had both issues.  The Clerk of the Supreme Court issued a directive limiting the number of attorneys who could present oral arguments.  The states were limited to one oralist per side per issue, a total of two on each side.[6] Therefore, each state could not present its own oralist for each of the arguments.  In the Kentucky and Michigan cases on Issue 1, one attorney argued for the plaintiffs and one attorney argued for the defendants.   In the Kentucky, Tennessee, and Ohio cases on Issue 2, one attorney argued for the plaintiffs and one attorney for the defendants.

The Kentucky plaintiffs' attorneys apparently could not reach a consensus with the Michigan plaintiffs' attorneys regarding who would argue Issue 1, and they requested a modification of the one oralist per issue per side procedure.  The request

---

[6]    The Supreme Court also granted the request of the United States Solicitor General for 15 minutes to argue on behalf of the plaintiffs on Issue 1.

was denied.  Although the impasse is clear from the billing entries, the entries do not completely explain how the conflict was resolved.  Cobbling the vague entries together, it appears that there was a meeting and possibly a moot court competition on March 29 in Ann Arbor, Michigan between the attorneys and proposed candidates for each state, with Mary Bonato having emerged as the agreed upon oralist for Issue 1. Six attorneys have charged the Commonwealth for time for attending the March 29 events.

Charges related to this internal dispute and impasse should not have been charged to the Commonwealth just as the charges should not be charged to a client.

These disputed fees are highlighted in Exhibit 4 and are summarized below:

| Attorney | Hours | Rate | Amount |
|---|---|---|---|
| Canon/Landenwich | 82.7 | $300 | $24,810 |
| Fauver/Elliott | 20 | $250 | $5,000 |
| Dunman | 19 | $250 | $4,750 |
| Esseks | 346 | $700 | $24,220 |
| Fisher | 8 | $750 | $6,000 |
| | | TOTAL | $64,780 |

**D.    Media-Related Expenses should be denied.**

Judge Heyburn ruled in his May 14, 2014 Order on the plaintiffs' first motion for attorney fees that "media and public relations expenses are not properly included in the calculation of Plaintiffs' attorney's fees."   [Doc. No. 85, Page ID #1188]. Despite this holding, which is now the law of the case, the plaintiffs have included fees for time incurred working with the media and on public relations.  The following fees are challenged:

| Date | Attorney | Description | Time | Amount |
|---|---|---|---|---|
| 7/21/14 | Landenwich | Draft and edit Love brief; meetings with DJC | 7.4 | $300 |

| | | | | |
|---|---|---|---|---|
| | | and LJD re same; research 6th Circuit panel; **correspondence with media** re panel and arguments | *(1.0) | |
| 9/18/14 | Landenwich | **Response to press inquiries** | 0.2 | $60 |
| 9/22/14 | Landenwich | **Response to press inquiries** | 0.2 | $60 |
| 10/02/14 | Landenwich | **Respond to media inquiry** | 0.2 | $60 |
| 10/03/14 | Landenwich | **Respond to media inquiry** | 0.2 | $60 |
| 10/07/14 | Landenwich | **Response to media inquiry; correspondence to clients re same** | 0.4 | $120 |
| 10/08/14 | Landenwich | **Response to media inquiry** | 0.2 | $60 |
| 10/12/14 | Landenwich | **Correspondence with clients and co-counsel re media requests**; correspondence from MMI counsel re plans after decision | 0.2 *(0.1) | $30 |
| 10/20/14 | Landenwich | **Response to media requests** | 0.2 | $60 |
| 1/08/15 | Landenwich | ACLU training; correspondence re same; **review draft press release;** compile plaintiff stories/photos | 5.0 *(1.0) | $300 |
| 1/16/15 | Landenwich | Receipt and review order granting cert; conference call with co-counsel re same; **field media requests;** correspondence with counsel from TN, OH, MI | 8.6 * (1.0) | $300 |
| 4/28/15 | Landenwich | Oral arguments at US Supreme Court; **press conference following arguments;** travel back to Louisville | 18.0 * (2.0) | $600 |
| 4/28/15 | Canon | Attend oral arguments; coordinate client and counsel traffic patterns **and media appearances;** meet w/clients and counsel at ACLU HQ; dinner mtg w JDE; prepare for return trip | 16.0 * (2.0) | $600 |
| 6/26/15 | Landenwich | Read and review SCOTUS opinion; **press conference; accompany clients to clerk's office to get license;** correspondence with counsel from all states | 4.5 * (3.5) | $1,050 |
| 6/26/15 | Canon | Review opinion; corresp w clients and all counsel, client mtg. **obtain license for Tim and Larry** | 4.5 * (3.5) | $1,050 |
| | | **TOTAL** | **15.7** | **$4,710** |

\*   See footnote 5.

**E.   The hourly rates for Professor Fisher and the ACLU are unreasonable.**

The two Louisville law firms that initiated *Bourke* and *Love* affiliated with the

ACLU and the Stanford Law School Supreme Court Litigation Clinic in December

2014 after the local firms prepared and filed the plaintiffs' Brief in support of their petition for writ of certiorari. Professor Fisher seeks recovery of $750 per hour for his services. (According to his amended declaration "[n]one of the fees procured from this fee petition will inure to the benefit of Stanford Law School.") [Doc. No. 107-1]. And James Esseks, Litigation Director of the ACLU Foundation's Lesbian, Gay, Bisexual, Transgender and HIV Project, seeks $700 per hour. Other ACLU attorneys who have submitted time entries in this case have charged fees of $400 and $325 per hour. Fisher's and Esseks' rates are more than twice that charged in the companion Michigan case by attorney Mary Bonato, who is Counsel and Civil Rights Project Director for Gay & Lesbian Advocates & Defenders ("GLAD") and argued Issue 1 for Kentucky and Michigan before the Supreme Court. *Deboer v. Snyder*, 12-civ-10285, [Doc. No. 180].

The qualifications of Professor Fisher and the ACLU attorneys are not challenged. Nor is the need to associate with experienced Supreme Court practitioners. Both Fisher and Esseks have been associated with other same-sex marriage cases in the past few years. Despite their experience and expertise, however, neither has cited a single case in which they have been awarded statutory fees in civil rights litigation at the extraordinary rate of $750 or $700 per hour. The plaintiffs' memorandum at page 19 references an ABA Journal article identifying hourly rates of $1,350 per hour *charged* by Paul Clement and $1,800 per hour by Theodore Olson, each a former Solicitor General of the United States. The plaintiffs have not cited any cases in which these distinguished attorneys have been awarded fees at those rates pursuant to a fee shifting statute, however. In fact, attorney Olsen was counsel of

record for the same-sex marriage plaintiffs in *Bostic v. Shaefer*, 760 F.3d 352 (4th Cir. 2014), and successfully argued the case to the Fourth Circuit Court of Appeals.  In that case, the attorneys requested fees of $1,738,645   2,372 hours.  *Bostic v. Rainey*, No. 2:13cv395 (Doc. No. 167) (filed Jan. 28, 2015).  The fees were settled by agreement for $520,000, less than 1/3 of the amount claimed.  Clearly, there is a distinction between charging a fee and recovering a fee.

Professor Fisher who seeks $750 per hour in this case was counsel of record in Tenth Circuit Court of Appeals, *Smith v. Bishop*, No. 14-136, a case similar to this one. In *Bishop*, the plaintiffs' motion for recovery of attorney fees stated that they were <u>not</u> seeking recovery for Professor Fisher's attorney fees because "[i]t is the policy of the Stanford Law School Supreme Court Litigation Clinic that Mr. Fisher not recover attorneys' fees."  See Plaintiff's Motion for Fees, Civil Action No. 4:04-cv-00848 (N.D. Ok.) [Doc. No. 299], filed 12/5/2014.  No. 299].  The highest hourly rate awarded by the district court in *Bishop* was $400 per hour.

In the companion Michigan case, *Deboer v. Snyder*, which was consolidated for arguments in the Supreme Court, the highest billing rate submitted is $350 per hour for Mary Bonato who argued Issued 1 for Kentucky and Michigan before the Supreme Court.  Based upon the information provided in attorney Bonato's declaration filed in the companion Michigan case she has "unique and highly specialized experience in constitutional advocacy on behalf of lesbian and gay persons generally and in challenging the constitutionality of exclusions from marriage."  [Exhibit 5, Bonato Declaration at ¶3].  She has been an attorney with GLAD since 1990 and was promoted to Civil Rights Project Director in 1992.  Her experience includes being the

lead or party counsel to the earliest successful challenges to state court statutes barring same-sex couples from marriage, to filing amicus briefs for GLAD or other organizations on state court marriage cases. She was counsel in the first federal court challenges to the federal Defense of Marriage Act and several others that followed. She coordinated amici briefs in a number of marriage cases as they made their way through the federal courts. She is a Shikes Fellow in Civil Liberties at Harvard Law School and teaches a reading group on LGBT issues every other semester. Also, she has co-authored sexual orientation discrimination chapters in employment law treatises (ABA, Massachusetts CLE). [Exhibit 5, Bonato Declaration]

Ms. Bonato has proposed a reasonable rate of $350 per hour in connection with her work in the companion *Michigan* case that should be used as the basis for the maximum attorney fee rate in this case.[7]

Reducing the maximum rate to the Bonato rate of $350 per hour would result in the following reductions:

| Attorney | Hours | Fee Reduction | Total |
|----------|-------|---------------|-------|
| Fisher | 206.5 | $400 | $82,600.00 |
| Esseks | 206.9 | $ 300 | $72,415.00 |
| Block | 76.91 | $50 | $ 3,845.50 |
| | | **TOTAL** | **$158,860.50** |

---

[7] Recovery of attorney fees is designed to provide access to the courts by victims of civil rights violations. *Hensley*, 461 U.S. at 429. Courts have determined that it is appropriate to consider the amount of risk in the case as a basis to determine an appropriate fee rate because the attorney who took the case is at risk of recovering nothing. Here, Professor Fisher and Esseks did not assume any risk associated with the case. Professor Fisher undertook representation of this case while maintaining his full-time professor position at Stanford Law and with the help of his colleagues and law students. [Fisher Amended Declaration at 107-1]. Fisher originally issued a declaration stating that the fees recovered would be turned over the Stanford Supreme Court Litigation Clinic, but that statement was revoked in his Amended Declaration. Compare [Doc. No. 105-5 at ¶ 4], with [Doc. No. 107-1 at ¶ 9].

**F.      Time entries for solicitation of amicus briefs are unreasonable.**

As set forth above, eighty amicus briefs were filed in the Supreme Court in support of the plaintiffs.  Because using those briefs can be beneficial for purposes of oral argument or supplemental briefing, review of amicus briefs is not inherently unreasonable.  However, it is unreasonable to charge an adverse party with soliciting amicus briefs as the attorneys have done in this case.  This issue was addressed by the *Bishop* district court.  The court adopted the following fee shifting rules related to amicus briefs.

> (1) post-filing activities, such as reviewing an amicus brief for purposes of preparing the party's own brief, preparing for oral argument, or preparing for trial, are generally compensable; (2) pre-filing activities must be carefully scrutinized and are not compensable if they constitute brain storming potential amici, strategizing regarding potential amici, coordinating potential amici, soliciting potential amici, or drafting/editing an amicus brief; and (3) pre-filing activities may be compensable if they are required by any procedural rules or otherwise deemed necessary and reasonable by the court.  Time records related to amicus briefs should be highly specific of subject to exclusion.

*Bishop v. Smith*, 4:04-cv-00848, Doc. No. 306 at pp. 17-18, Exhibit 2, attached.

The following time entries appear to be related to the solicitation of amicus briefs and should be rejected.

| Date | Attorney | Description | Time @$250/ HR |
|------|----------|-------------|------|
| 6/1/14 | Elliott | Read draft of amicus curiae brief (Republican Brief) in support of Appellees | .5 |
| 6/1/14 | Elliott | Read draft of Amicus Curiae brief written by counsel for Western Republicans in support of Appellees. | .5 |
| 6/2/14 | Elliott/ Fauver | Reviewed draft of brief__(sic), sf and DE | 1.5 |
| 6/3/14 | Elliott | Spoke with Mary B regarding briefs that still need work.  Was assigned Republican, family and religious briefs, Work on Republican and Religious Briefs, research regarding family | 5.5 |

| | | | |
|---|---|---|---|
| | | law brief, spoke with Jamie Abrams regarding Family Law brief. Emailed her KY same sex adoption appeal documents. | |
| 6/4/14 | Fauver | Talk to businesses re business brief | 2.0 |
| 6/4/14 | Elliott | Spoke with Louis Waterman in regards to the first same sex divorce filing in KY. Louis gave me an update on the case, infor to be used in the 6th cir family law brief and emailed documents to Jamie Abrams, Research into Republican brief. Emailed and spoke with possible participants to the brief. | 4.25 |
| 6/5/14 | Elliott | Spoke with numerous elected and former elected Republican officials asking for their support in KY's marriage equality case. | 3.0 |
| 6/7/14 | Fauver | Worked on business briefs and discussions with Mary re same | 2.5 |
| 6/9/14 | Fauver | Worked on business brief and 6th circuit brief, work on Republican and Religious briefs | 3.5 |
| 6/10/14 | Elliott | Calls regarding Republican brief support in KY | 2.5 |
| | | **TOTAL HOURS** | **25.75** |
| | | **TOTAL DOLLARS** | **$6,437.50** |

## G.   Overall Reduction for block billing and vague descriptions.

The time entries for the Louisville attorneys are replete with block billing entries, making it impossible to determine the reasonableness of the time charged for the individual tasks within the entries. Block billing when seeking fee reimbursement often results in fee reductions. Recently, the Eastern District of Virginia reduced an attorney fee petition by 10% for the block billing and explained the problem created by block billing:

> [Block billing] ignores the possibility that an attorney might devote reasonable time to one reasonably reimbursable request and spend an unreasonable amount of time on another reasonably reimbursable task, and that, as a result, a fee request must thereby be reduced. Such a result would be required by the command that the Court should not award fees for hours that [are] "excessive, redundant, or otherwise unnecessary."

*McAfee v. Boczar*, 906 F.Supp.2d 484, 499 (E.D. Va. Nov. 2, 2012), *vacated and remanded on other grounds* (with a further reduction of attorney fees), by 738 F.3d 81

(4th Cir. 2013), *as amended* Jan. 23, 2014. *See also Latta v. Otter,* 1:13-cv-00482, Doc.

No. 139 (filed 12/19/14) (same-sex marriage case reducing block billed hours by 10%).

The *McAfee* Court held that counsel prosecuting certain civil rights actions are:

> charged with knowledge that, if they prevail, fees are available from the
> adverse party under § 1988 . . .. It is not demanding too much to ask
> that, in such cases, counsel refrain from block billing because, however
> acceptable it is to a client, it is not helpful in assessing entitlement to a
> fee from an adversary under § 1988.

*McAfee,* 906 F.Supp. at 499-500. District courts have emphasized the danger to

attorneys in employing block billing. "The court's role is not to labor to dissect every

individual entry to hypothesize if the different tasks in the same entry could

reasonably result in the requested time. *Project Vote/Voting for America, Inc. v. Long,*

887 F.Supp.2d 704, 717 (E.D. Va. 2012) (reducing fees by 10% after making specific

hourly reductions for travel time, unreasonable hourly rates, and duplicative fees). In

the *Bostic* same-sex marriage case, the attorneys **agreed** in the attorney fee settlement

agreement to a number of reductions, including a general reduction of 20% to all

block billed hours in addition to other specific exclusions. *See Bostic v. Rainey,* No.

2:13cv395 (Doc. No. 167) (filed Jan. 28, 2015).

The problems caused by the Fauver/Elliott block time entries are compounded

by their use of joint time entries and vague descriptions. There are repeated entries

for "communications with client and co-counsel, SF and DE" with a collective time

entry for both attorneys. There is no affirmation in the Fauver declaration of

contemporaneous time keeping, making the accuracy difficult to establish. Further,

many entries are for both attorneys with no division of labor, and some of the entries

fail to designate which attorney provided the services. *See Hensley*, 461 U.S. at 457,

n. 13 (approving of the district court's reduction of one attorney's hours by thirty percent to account for his inexperience and failure to keep contemporaneous time records) and *Hamby v. Walker,* 3:14-cv-00090 (D. Al. Oct. 24, 2014) (reducing the fee recovery in same-sex marriage case by 25% based upon billing issues including vague entries, block billing, excessive and unnecessary entries).

The Canon, Landenwich and Dunman entries also have a significant number of block billings throughout their fee requests. Some examples include:

| Date | Attorney | Description | Time |
|------|----------|-------------|------|
| 2/13/14 | Landenwich | Correspondence to and from potential marriage license clients; draft, edit, and finalize intervening complaint and motion for preliminary injunction; research re motion to intervene standard | 8.4 |
| 3/17/14 | Landenwich | Correspondence with co-counsel, opposing counsel, telephonic hearing, preparation for hearing | 5.5 |
| 6/06/14 | Canon | Prep cover page for 6CA, corresp re editing timeline and moots for oral argument; conference with co-counsel re briefing | 2.8 |
| 6/9/14 | Landenwich | Research re hate crime statistics; edit, finalize, and file brief; correspondence re amici | 9.5 |
| 7/7/14 | Landenwich | Draft joint motion to consolidate on appeal; meeting with co-counsel; correspondence with clients; correspondence with opposing counsel; call to court clerk | 6.5 |
| 7/7/14 | Landenwich | Review transcripts from 10th circuit arguments; receipt and review correspondence from clerk; correspondence with potential moot judges; receipt and review order on procedure for oral arguments; correspondence with clients; prep for argument | 8.5 |
| 7/18/14 | Canon | Prep question for moot argument, review 10CA opinion, attend Louisville moot (panelist) | 6 |
| 4/28/2105 | Canon | Attend oral arguments; coordinate client and counsel traffic patterns and media appearances; meet with clients and counsel at ACLU HQ; dinner mtg w JDE; prepare for return trip. | 16 |

Based upon the foregoing billing issues, the defendant requests that after all specific fee reductions are made as outlined above, the remaining fees of Canon/Landenwich

and Fauver/Elliott be reduced in their entirety by 10% for block billing and an additional 10% reduction for Fauver/Elliott for vague entries, combined attorney time entries and failure to establish maintenance of contemporaneous time records.

**H.    This case does not meet the criteria for enhancement.**

The plaintiffs not only seek fees of $1,125,929, which includes hourly rates as high as $750, $700, and $400 per hour, and costs of $32,727.70, they also seek enhancement of fees <u>and</u> expenses of 75%, bringing the total amount claimed to $2,091,297.34.[8]  Judge Heyburn awarded plaintiffs a $10,000 "bonus" in their first motion for attorney fees associated with the *Bourke* summary judgment order.  That modest bonus essentially returned to the plaintiffs the amounts that Heyburn excluded as unrecoverable.  Aside from that, the undersigned has not located any fee enhancements awarded in the same-sex marriage cases and the plaintiffs have not cited any of the same-sex marriage cases in which an enhancement has been granted. In fact, many of the courts to have considered the fee petitions in federal same-sex marriage cases have denied enhancement requests or reduced the fees by an overall percentage or substantially reduced the requested fees based upon hours.  *See Latta v. Otter*, No. 1:13-cv-482, Doc. No. 139 (D. Idaho. Dec. 19, 2014 (request for

---

[8]    These numbers are taken from the plaintiffs' Memorandum.  There are several problems with the calculations, however.  First, the fees and costs are identified on pages 1, 2 and 10 of the Memorandum, but the numbers are inconsistent.  For example, on page 1, the fees for Clay Daniel Walton Adams are listed as $543,405.27.  The chart on page 10, however, identifies the fees for the firm's three attorneys (Canon, Landenwich and Dunman) as $544,979.95 – a difference of $1,574.23.  Regardless of which number is used, however, applying the 1.75 multiplier to all of the fees does not equal $2,091,298.24.  Even if the expenses of $32,727.16 are added in and the multiplier applied, the number is significantly less than $2,091,298.24.  (The enhanced number appears to be approximately $70,000 too high, even if expenses are included in the multiplier, which would be erroneous).  Based upon the fees listed at pages 1 and 2, an enhancement of 75% (1.75 multiplier) without expenses would total $1,967,620.85.

enhancement denied and overall reduction of fees by approximately 15%); *Bishop v. Smith*, Doc. No. 306, No. 4:04-cv-848 (N.D. Okla. May 1, 2015) (fee enhancement denied and overall reduction of fees by approximately 20%); *Hamby v. Walker*, Doc. No. 62, No. 2:14-cv-00089 (D. Ak. April 15, 2015) (reduced hourly rates from range of $200-$425 to $175-$375  and cut hours by 25%); *Condon v. Haley*, Doc. No. 69, 2:14-cv-4010 ( D. S.C. Aug. 10, 2015) (reduced by approximately 10% ); *McGee v. Cole*, Doc. No. 162, 3:13-cv-24068 (S.D. WV July 16, 2015) (reduced by approximately 75%); *Guzzo v. Mead,* Doc. No. 81, 2:14-cv-200 (D. Wy., Apr. 9, 2015) (fee request of $92,728 reduced to $58,967 based upon cut in hours).

Plaintiffs rely heavily upon the "undesirability" of this case as a basis for enhancement.  There were certainly strong public opinions on both sides of this issue. However, the attorneys' declarations supporting their fee petition undermine the notion that they were  without support in prosecuting this case.  The plaintiffs had the full support of the prestigious Stanford Supreme Court Litigation Clinic and the ACLU.  Esseks reports in his declaration that Steven R. Shapiro, Legal director of the national ACLU, with 39 years of experience who "leads all of the ACLU's Supreme Court practice" "donated well over 100 hours to the marriage cases in the Supreme Court."  [Esseks Declaration at ¶ 19].  Louise Melling, Deputy Director of the national ACLU, with 25 years of experience and who "supervises the ACLU's work on LGBT rights, women's rights, reproductive freedom, and religion also donated over 100 hours to the Supreme Court marriage cases.  Two more ACLU staff attorneys, with a combined experience of 17 years of experience, contributed a collective 150 hours to the Supreme Court marriage cases.  Professor Fisher reports that he volunteered

dozens of hours of his time "strategizing and reflecting with students" on the case and that his students spent "hundreds of hours of [their] own time helping [him] craft and edit the briefs and researching various legal issues." [Fisher Amended Declaration at ¶ 6]. There were eighty amicus briefs filed in support of the plaintiffs at the Supreme Court, whose filers included:  American Bar Association; 187 Members of the U.S. House of Representatives and 44 U.S. Senators; Commonwealth of Virginia; Elected Officials and Former Officeholders of Michigan, Ohio, Kentucky and Tennessee, and the Michigan and Ohio Democratic Parties; Howard University School of Law Civil Rights Clinic; Indiana University; Professor Laurence H. Tribe and Michael C. Dorf; State of Hawaii; State of Minnesota; and the American Sociological Association.

The strong and widespread support enjoyed by the plaintiffs in this case vastly overshadows the available resources in the cases the plaintiffs rely upon in support of their enhancement request.  In *Brotherton v. Cleveland,* 141 F.Supp.2d 907 (S.D. Ohio 2001), an enhancement was granted to a solo practitioner in a case turned down by others and that brought to light a previously unrecognized cause of action, and in *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005), the "undesirability" of the case was demonstrated by affidavits of two attorneys who stated that few lawyers locally or nationally would take such a case.  In contrast, this case garnered national support from attorneys who volunteered their time to assist counsel and it appears from the billing records that a "moot off" was used to select the Supreme Court oralists from among highly qualified candidates vying for the opportunity to be included as counsel of record in this case.  In *McKenzie v. Kennickell,* 277 U.S. App. D.C. 297, 875 F.2d 330 (D.C. Cir. 1989), the attorney was rewarded with a fee

enhancement because he remained active in the case that was litigated over a 15 year period of time.  This case started with the *Bourke* complaint on July 26, 2013 and the Supreme Court granted victory to the plaintiffs twenty-four months later on June 26, 2015.  [Plaintiffs' Memorandum at P. 28].

From as early as October 28, 2013, a few months after the Complaint was filed, this case was staffed by two Louisville law firms.  The Kentucky plaintiffs were not the first to challenge state law same-sex marriage bans.  The Sixth Circuit, the Fourth, Seventh and Tenth Circuits resolved the issue in favor of the plaintiffs in those circuits and many district courts in other circuits were deciding the issue along the way, including *Bostic v. Rainey*, 970 F.Supp.2d 46 (E.D. Va. 2014); *Geiger v. Kitzhaber*, 994 F.Supp.2d 1128 (D. Or. 2014), *Whitewood v. Wolf*, 992 F.Supp.2d 410 (M.D. Pa. 2014); *DeLeon v. Perry*, No. 13-00982, 2014 WL 715741 (W.D. Tex. 2014); *Latta v. Otter*, No. 1:13-cv-482 (D. Id. May 13, 2014); *Burns v. Hickenlooper*, No. 14-cv-01817, 2014 WL 3634834 (D. Colo. July 23, 2014).  This case was not the first to address the issue of the constitutionality of statute statutes prohibiting same sex marriage.

When looking at whether the plaintiffs achieved remarkable success, the case had been won by the plaintiffs in the Fourth, Seventh, and Tenth Circuits and, the Supreme Court repeatedly denied certiorari to the unsuccessful state defendants.  All but two federal district courts who had considered the issue, from Louisiana and Puerto Rico, had stricken the same-sex marriage bans as well.  It is an understatement to say that the litigation tide was certainly in the plaintiffs' favor throughout the country as this case was being litigated.

In analyzing an enhancement, the Supreme Court has applied the following twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3, 434 n. 9 (1983) (applying the factors from *Johnson v. Georgia Highway 430 Express, Inc.*, 488 F.2d 714 (CA5 1974)).   The Supreme Court, however, has limited the application of the *Johnson* factors, noting that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."   *Id.*   In its clearest pronouncement concerning the *Johnson* factors, the Supreme Court held that neither the complexity nor novelty of the issues in a case is an appropriate factor in determining whether to increase the basic fee award.  *Blum v. Stenson*, 465 U.S. 886, 898–99 (1984).

There is no question that the issues in this case were important or that the case was one of particular importance to the public and media.  There is no question that the plaintiffs' attorneys provided quality representation to their clients.  But, the facts of this case are not the type in which fee enhancements have been awarded.  Resolution of the merits proceeded at an extraordinary pace, the plaintiffs were supported by the Stanford Supreme Court Litigation Clinic, no less than seven attorneys from the ACLU, and the overwhelming majority of prior cases had been

decided in favor of striking the marriage bans.  The quality work performed by the attorneys in this case has been reflected through the number of hours that they have charged for their time and their rates.  No additional enhancement is warranted.[9]

## CONCLUSION

Congress intended the attorney fee shifting scheme to ensure "effective access to the judicial process." *Hensley*, 461 U.S. at 429.  In this case, the challenged excessive fees did not contribute toward that end.  They are the result of overstaffing, inefficiencies, duplication of efforts and unrelated fees.  Just as it would not be reasonable to charge a client with these fees, so should they be rejected when sought against the Commonwealth.  The fees sought in this case are higher than those sought in companion Ohio case.  With the 75% enhancement factor applied, they are higher than the fees sought in the companion Michigan case, whose procedural history included a nine-day bench trial with expert witnesses, a district court that did not stay its judgment, resulting in an emergency stay petition at the Sixth Circuit that was granted.  The attorneys seeking fees in this case contend that there are hundreds of hours contributed by other attorneys who have not sought reimbursement in this motion.  [Esseks Declaration at P. 19, Doc. 105-3].  It is all the more astounding, then, that these attorneys have submitted hours and expenses that exceed $1million and

---

[9]    Even if an enhancement were appropriate in this case, a bump of 75% would be wholly unreasonable.  As a general rule, the upward adjustment for risk may be no more than one third of the lodestar, and "[a]ny additional adjustment [for risk] would require the most exacting justification." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 730 (1987). The plaintiffs have failed to provide justification to meet the stringent test for even a general risk enhancement, much less any additional amount.

that they seek a bonus of another million dollars.  Surely fees of $2 million are not necessary to ensure effective access to the judicial process.  Therefore the defendant objects to the fee requests and asks that the award be reduced to a reasonable amount.

Respectfully submitted,

VanAntwerp Attorneys, LLP

*/s/ Leigh Gross Latherow*
Leigh Gross Latherow
William H. Jones, Jr.
Gregory L. Monge
P.O. Box 1111
Ashland, KY 4110501111
llatherow@vanattys.com
wjone@vanattys.com
gmonge@vanattys.com
Phone 606-329-2929
Fax 606-329-0490
Counsel for Defendant
Steve Beshear in his official
capacity as Governor of Kentucky

## CERTIFICATE OF SERVICE

It is hereby certified that on September 25, 2015, the foregoing was filed with the clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all parties.

/s/ Leigh Gross Latherow
Leigh Gross Latherow