UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GREGORY BOURKE, et al.                                                                   PLAINTIFFS

and

TIMOTHY LOVE, et al.                                                         INTERVENING PLAINTIFFS

v.                                                                   CIVIL ACTION NO. 3:13-CV-00750-CRS

STEVE BESHEAR, et al.                                                    INTERVENING DEFENDANTS

### MEMORANDUM OPINION

Plaintiffs move for attorney fees and costs in connection with their successful 42 U.S.C. § 1983 claim.[1] Plaintiffs request:

1. Attorney fees in the amount of $1,126,664.27,[2]

2. Costs in the amount of $32,727.86, and

3. Enhancement to their requested attorney fees by a factor of 75% above their services for which they billed.

For the reasons stated in this opinion, this Court will award Plaintiffs:

1. Attorney fees in the amount of $1,082,905.10 and

2. Costs in the amount of $32,727.86.

In total, the Court will award Plaintiffs $1,115,632.96 in attorney fees and costs.

---

[1] The Court notes Plaintiffs and Defendants filed briefs to this Court plagued by problematic calculations. Plaintiffs provided multiple inconsistent summaries of attorney fees and costs that never totaled the amount Plaintiffs requested in their motion. *See infra* n.4. Therefore, the Court will construe Plaintiffs' request for attorney fees and costs at the lowest amount based on figures in their supporting memorandum. *Id.*

[2] *See infra* n.4.

1

The Court declines to award Plaintiffs a fee enhancement because awarding legal fees in excess of the fees actually earned and documented would be unwarranted in this case. The requested attorney fees without an enhancement already account for the attorneys' skill, experience, labor, and success.

Courts award enhanced attorney fees under rare circumstances when an enhancement is necessary to determine a reasonable fee for the services rendered. Courts only award this enhancement when an exceptional factor is present, such as when counsel cannot be obtained without a potential for upward adjustment or counsel takes a significant risk in undertaking the litigation. That was not the case here. While the Plaintiffs were successful in this litigation, they also enjoyed widespread support at the same time many attorneys in other districts took up similar litigation.[3]

In this matter, the law firms of Clay Daniel Walton Adams, PLC and Fauver Law Firm, PLLC were local counsel. Local counsel attorneys included Daniel Canon, Laura Landenwich, L. Joe Dunman, Dawn Elliott, and Shannon Fauver. Local counsel associated with experienced appellate practitioners after the district court phase of litigation, including the American Civil Liberties Union Foundation ("ACLU") and the Stanford Law School Supreme Court Litigation Clinic. These practitioners included James Esseks, Chase Strangio, and Joshua Block of the ACLU, and Jeffrey L. Fisher of the Stanford Law School Supreme Court Litigation Clinic. On June 26, 2015, the United States Supreme Court issued its opinion in this matter under the name

---

[3] Indeed, it is notable that states defending this and similar lawsuits had a difficult time finding experienced counsel. As Adam Liptak reported in the *New York Times*, "Leading law firms are willing to represent tobacco companies accused of lying about their deadly products, factories that spew pollution, and corporations said to be complicit in torture and murder abroad. But standing up for traditional marriage has turned out to be too much for the elite bar. The arguments have been left to members of lower-profile firms…. Law firms that defend traditional marriage may lose clients and find themselves at a disadvantage in hiring new lawyers." Adam Liptak, "The Case Against Gay Marriage: Top Law Firms Won't Touch It," *The New York Times* (April 11, 2015).

*Obergefell v. Hodges*. Plaintiffs succeeded on all claims and the parties do not dispute Plaintiffs are "prevailing parties" under Section 1983.

## DISCUSSION

1. **The Lodestar Method**

The Court may "allow the prevailing party … a reasonable attorney's fee as part of the costs" in various civil rights suits, including those brought under Section 1983. 42 U.S.C. § 1988(b). In vindicating these civil rights, the plaintiff serves "as a private attorney general, vindicating a policy that Congress considered of the highest priority." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 824 (6th Cir. 2013) (quoting *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (internal quotations and citations omitted)). Fee shifting serves the dual purpose of reimbursing a plaintiff for vindicating civil rights and holding the violator accountable. *See Fox*, 131 S. Ct. at 2213.

The Court calculates attorney fees with a two-step process. *See Perry v. Autozone Stores, Inc.*, No. 14-5185, 2015 WL 4940121, at *1 (6th Cir. Aug. 20, 2015) (*citing Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir.2006)). First, the Court determines a reasonable attorney fee based on the "lodestar" amount. *Perry*, 2015 WL 4940121, at *1. The lodestar amount is "calculated by multiplying the number of hours reasonably spent on the case by an appropriate hourly rate in the relevant community for such work." *Id.* "To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

The Court may then, within its discretion, "adjust the lodestar to reflect relevant considerations peculiar to the subject litigation." *Perry*, 2015 WL 4940121, at *1 (quoting *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000)) (internal quotations omitted). Although not exclusive, the Court may consider twelve factors in determining whether an adjustment is necessary:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Perry*, 2015 WL 4940121, at *1 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

Although this Court "enjoys wide discretion in awarding attorneys fees," the Court is guided by a concern of reasonableness. *Barnes v. City of Cincinnati*, 401 F.3d 729, 746 (6th Cir. 2005); *see also Perry*, 2015 WL 4940121, at *1. The award should "roughly approximate[] the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The Court strives to reimburse the successful plaintiff, but not overcompensate the attorneys for their efforts. *See Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999).

2. **The Lodestar Amount**

Plaintiffs inconsistently represent the total amount of attorney fees they seek. While their second motion for attorney fees and costs says the amount is $2,091,297.34, multiple summaries

4

of the relevant fees included in the memorandum supporting the motion fall below this amount. *See* Pls.' Mem. Supp. Mot. Attorney's Fees & Costs 1-2, ECF No. 150-1; *id.* 10; Proposed Order, ECF No. 150-20. Indeed, Defendants pointed out some of these inconsistencies in their response to the motion. *See* Defs.' Resp., ECF No. 110. Due to Plaintiffs' failure to address these inconsistencies and miscalculations, the Court will construe Plaintiffs' request for attorney fees and costs at the lowest amount based on figures in their supporting memorandum: $2,002,657.83.[4] This figure includes $1,124,354.27 of newly requested attorney fees. Defendants raise numerous objections to the reasonableness of the fees included in that amount. The Court will discuss each objection in turn.

a. Whether Plaintiffs Overstaffed Attorneys to Prepare Supreme Court Briefs

Defendants, relying on a district court case from another district within a different circuit, first argue that the use of nine attorneys, including the director of the Stanford Supreme Court Litigation Clinic, Jeffrey Fisher, to prepare Supreme Court briefs was unnecessary. Plaintiffs submitted time entries for nine attorneys relating to drafting, reviewing, editing, and conferring to produce the petition for certiorari reply brief, merits brief, and merits reply brief. Defendants do not contest Fisher's involvement, but do contest portions of the other eight attorneys' submitted entries. Defendants argue that the issues involved in the case were not new or novel, that previous courts had already issued opinions on questions raised, and that the Stanford

---

[4] This calculation comes from Plaintiffs' stated attorney fees and costs in their introduction to the supporting memorandum. Pls.' Mem. Supp. Mot. Attorney's Fees & Costs 1-2. Plaintiffs say the attorney fees are as follows: $543,405.27 (Clay Daniel Walton Adams, PLC); $219,150.00 (Fauver Law Firm, PLLC); $206,924.00 (American Civil Liberties Union Foundation); and $154,875.00 (Jeffrey L. Fisher and the Stanford Law School Supreme Court Litigation Clinic). *Id.* Plaintiffs also request an additional $2,310 for attorney fees related to the Intervening Plaintiffs' intervening petition. *See id.* 7, n.1. Further, Plaintiffs say the costs are as follows: $18,948.87 (Clay Daniel Walton Adams, PLC); $5,978.83 (Fauver Law Firm, PLLC); and $7,800.16 (American Civil Liberties Union Foundation). *Id.* 1-2. This results in $1,124,354.27 in requested attorney fees, before the 75% modifier, $2,310 in requested attorney fees relating to work related to the intervening petition, and $32,727.86 in requested costs. After the requested 75% modifier is applied to $1,124,354.27, the total requested amount is $2,002,657.83.

Supreme Court Litigation Clinic and outside counsel provided free legal services in addition to the nine attorneys. This objection amounts to $147,595[5] of the attorney fees sought.

The Court does not find Defendants' arguments persuasive. It is reasonable for local counsel to continue active involvement with the litigation even after associating with a Supreme Court specialist. While Defendants have not contested what they believe to be "original drafting," Defs.' Resp. 10, it is reasonable to have multiple individuals revising and reworking a draft brief. Brief writing is often a collaborative process. Indeed, Fisher only billed 206.5 hours for the certiorari reply brief, merits brief, and merits reply brief. Fisher Time Sheet, ECF No. 110-1. The eight other attorneys spent a total of 390.95 hours drafting, reviewing, editing, and conferring to produce three appellate briefs. Defs.' Resp. 10. Three of those eight attorneys spent less than 27 hours together on those tasks. *Id.* Another attorney only spent 35.9 hours working on the three briefs. *Id.* Hence, the majority of the hours Defendants now challenge were from four attorneys, not eight. These are reasonable costs. Defendants hyperbolize non-existent overbilling by focusing on the number of attorneys staffed and not the hours those attorneys billed.

Defendants' argument that the issues were not new or novel is also misplaced. The existence of previous court decisions concerning similar issues does not limit Plaintiffs to only one attorney to produce three appellate briefs. Although Fisher did have pro bono assistance from students and other attorneys, this should not diminish the fees the billing attorneys now seek.

The Court will deny Defendants' challenge to $147,595 of the requested attorney fees.

---

[5] Defendants' response contains a calculation error relating to the fees they dispute. Although they claim to challenge $173,695 on overstaffing grounds, Defendants included an errant "0" for the "Canon/Landenwich" time entry. *See* Defs.' Resp. 10. Accounting for this error, Defendants' challenge $147,595 of the sought attorney fees. Regardless, this error is immaterial to the Court's decision.

b. <u>Whether Plaintiffs Charged for Too Many Attorneys to be in Washington, D.C.</u>

Defendants argue that the six attorneys and one paralegal constitute an excessive number of attorneys and staff traveling to and working in Washington, D.C. during the week of Supreme Court oral argument. This objection amounts to $73,830 of the attorney fees sought.

Similar to Defendants' arguments concerning the staffing on the appellate briefing, challenging the *number* of attorneys or staff members assisting with a particular task misses the mark. While Defendants do mention particular tasks that these individuals performed while in Washington, D.C., Defendants do not elaborate on why these entries are unreasonable.

Plaintiffs explain that while Canon, counsel of record for the Kentucky plaintiffs, did attend each moot court, the other members of the legal team did not. Instead, these individuals arrived later to assist with oral argument preparation. As Plaintiffs point out, none of these attorneys argued before the Supreme Court concerning this case. Just as with brief writing, however, preparation for oral argument often requires more than the individual oralist. The immediate feedback provided by attorneys and staff on the ground in Washington, D.C. while oralists were preparing for argument allowed local counsel to advocate for their clients and "shap[e] the direction and substance of oral argument." Pls.' Reply 6, ECF No. 111.

The Court will deny Defendants' challenge to $73,830 of the requested attorney fees.

c. <u>Whether Charging for Meetings with Co-Counsel in California is Reasonable</u>

Defendants argue that it was unreasonable for Plaintiffs to charge for five local attorneys to travel to California with their clients to meet with co-counsel. Defendants say that the purpose

of the trip is unclear and that there is no justification to travel to California instead of digitally conferencing with co-counsel. This objection amounts to $45,817.50 of the attorney fees sought.

Although meetings with co-counsel for a reasonable purpose related to litigation may be an acceptable billing expense, it is unclear from the tendered entries the purpose of these meetings. Plaintiffs also fail to illuminate these entries in their reply brief. Without a more detailed description, the entries as submitted are not reasonable expenses.

The Court must also determine the proper amount of unreasonable fees. While Defendants object to $45,817.50 in attorney fees, some of the entries contested contain multiple tasks that are reasonable and do not relate to travel, or meetings with co-counsel or amici. The reasonable entries relate to brief editing and review, and correspondence related to those tasks. *See* Defs.' Resp. 12-13. The Court will subtract from Defendants' challenge $1,185 in fees related to Landenwich's entries and $5,583.33 related to Elliot and Fauver's entries, which appear to be reasonable and proper.

The Court will deny Plaintiffs' request for $39,049.17 of the requested attorney fees.

d. Whether Charging for Time Resolving Conflicts with Counsel in Joined Cases is Reasonable

Defendants argue that Plaintiffs unreasonably charged for settling a dispute between counsel representing parties joined for Supreme Court oral argument. This dispute related to which oralist would present one of the issues. This objection amounts to $64,780 of the attorney fees sought.

The Supreme Court joined cases from four states prior to oral argument. The Supreme Court only allowed one oralist to argue each of the two questions the briefs addressed. While counsel from each case may have preferred to present oral argument, the Supreme Court required

counsel to agree on only two oralists. Under these involuntary constraints, Plaintiffs reasonably sought to have the best oralist argue each issue. The attorneys, however, initially differed on which attorney would advocate on the first question. In order to determine the oralist, counsel met to determine which attorney would best ensure exemplary presentation of the case. The Court finds billing for this time is reasonable. Counsel did not seek out an alternative advocate, but were compelled by the Supreme Court to compromise with involuntarily joined counsel. In achieving this compromise, they protected their clients' interests.

The Court will deny Defendants' challenge to $64,780 of the requested fees.

e. Whether Charging for Media-Related Expenses is Reasonable

Defendants argue that Plaintiffs fees for media-related expense are unreasonable. Plaintiffs argue these media appearances were essential to effective representation. This objection amounts to $4,710 of the attorney fees sought.

The Court reiterates Judge Heyburn's previous ruling that "media and public relations expenses are not properly included in the calculation of Plaintiffs' attorney's fees." ECF No. 85. These expenses were not "reasonably necessary for the proper prosecution of the lawsuit." *Gratz v. Bollinger*, 353 F. Supp 2d 929, 941 (E.D. Mich. 2005) (quoting *Keyes v. Sch. Dist. No. 1, Denver, Colo.*, 439 F. Supp. 393, 408 (D. Colo. 1977) (internal quotation omitted)). Plaintiffs admit their efforts were aimed to "humaniz[e] them in front of national and international audiences" and assist in the "broader social discourse." Pls.' Second Mot. Atty.'s Fees & Costs, 16. While it may also be true that media inquiries were numerous from an interested public, answering these inquiries cannot be considered necessary for the proper litigation of the suit.

The Court will deny Plaintiffs $4,710[6] of the requested attorney fees.

f. Whether the Hourly Rates of Fisher and the ACLU are Reasonable

Beyond local counsel, Plaintiffs request attorney fees for Fisher, Esseks, and two other ACLU attorneys. Local counsel associated with these experienced Supreme Court practitioners prior to submitting their petition for certiorari to the Supreme Court. Plaintiffs seek $750 per hour for Fisher's services, $700 per hour for Esseks' services, and $400 and $325 per hour for the other ACLU attorneys' services. Defendants do not challenge the tasks associated with the fees, but request a substantial fee rate reduction for each of these attorneys. This objection amounts to $158,860.50 of the attorney fees sought.

Defendants do not object to the qualifications of these attorneys or the need for local counsel to associate with experienced Supreme Court practitioners. Rather, Defendants argue that the fees sought are too high. Defendants point to the fees Mary Bonato, who is Counsel and Civil Rights Project Director for Gay & Lesbian Advocates & Defenders, charged for her service in the joined Michigan case. Bonato requested $350 per hour of service. Furthermore, Defendants also argue that Plaintiffs do no cite a single case where fee shifting in a similar civil matter resulted in fees this high.

Defendants' arguments, however, miss the point. The lodestar analysis focuses on the prevailing rate for practitioners in the *relevant community* for such work, not the rate for one chosen attorney in a particular joined case.[7] Defendants' secondary argument that Plaintiffs have

---

[6] Plaintiffs' billing entries sometimes include a total amount of time billed for multiple tasks without listing the amount of time billed for discrete tasks. Where this has occurred and Defendants' object to some, but not all, of the block billed tasks, Defendants have estimated the time for those discrete tasks it challenges. *See* Defs.' Resp. 15-16.

[7] Notably, the attorney, Mary Bonato, that the Defendants urge as the parallel to Fisher had not previously presented an oral argument to the United States Supreme Court. Pls.' Reply 2.

10

failed to cite an adequate fee shifting case with similar fees is also a red herring. The lodestar amount is not the reasonable rate based only on previous fee shifting cases that the Plaintiffs also happen to cite in their brief. These arguments do not indicate Fisher, Esseks, or the other ACLU attorneys charged unreasonable rates.

Indeed, the Court finds Defendants provided sufficient justification that the rates sought for these attorneys are reasonable. Fisher is the co-director of the Stanford Supreme Court Litigation Clinic. He has practiced in front of the United States Supreme Court for approximately twelve years. Fisher Decl. ¶ 3, ECF No. 105-5. He has presented oral argument in twenty-seven cases and participated in briefing dozens of additional cases. *Id.* In a considerable number of those cases, Fisher represented plaintiffs in civil rights matters. *Id.* As cited by Plaintiffs, practitioners with similar experience earn between $1,000 and $1,800 per hour in litigating Supreme Court matters. Pls.' Mot. Atty.'s Fees & Cost 19. Defendants do not contest that similar practitioners earn these fees for their representation before the Court.

Esseks is the Litigation Director of the ACLU Foundation's Lesbian, Gay, Bisexual, Transgender and HIV Project. Esseks was co-counsel in *United States v. Windsor* and has been co-counsel in other state and federal court marriage litigation. The other two ACLU attorneys, Chase Strangio and Joshua Block, completed a substantial amount of the Supreme Court briefing. Plaintiffs provide a declaration from a practitioner in Esseks' previous firm attesting to similar fees charged to clients for work in the relevant market with similar seniority to Esseks and the other ACLU attorneys. The Court finds that the rates requested are reasonable for attorneys in the relevant market.

The Court will deny Defendants' challenge to $158,860.50 of the requested fees.

g. Whether Charging for the Solicitation of Amicus Briefs is Unreasonable

Defendants argue that it is unreasonable to charge for the solicitation of amicus briefs. This objection amounts to $6,437.50 of the attorney fees sought. Defendants' argument, however, consists of including a block quoted rule from a district court in another district within a different circuit. Defendants do not provide any explanation why this Court should follow this rule or even any analysis of how that rule would apply to this case.

Plaintiffs do provide sufficiently detailed time entries describing attorney review of amicus briefs and discussions with various potential amici. Amicus briefs are part of appellate practice and can influence the court. These briefs are not solely filed to "make an end run around court-imposed limitations on the length of parties' briefs," *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 544 (7th Cir. 2003) (Posner, J., in chambers), but also function to "assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." *Id.* at 545. A paying client would expect an attorney to seek out a variety of amici that could assist in the case's presentation. The Court finds Plaintiffs reasonably charged for the review and solicitation of amicus briefs.

The Court will deny Defendants' challenge to $6,437.50 of the requested attorney fees.

h. Whether there Should be an Overall Reduction for Block Billing and Vagueness

Defendants' objection to the Plaintiffs' billing format lacks merit. Defendants cite no authority binding on this Court to support its argument that block billing is inconsistent with requesting reasonable attorney fees. The Sixth Circuit Court of Appeals has consistently held that block billing is acceptable as long as "the description of the work performed is adequate." *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014); *see also Pittsburgh & Conneaut*

*Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 273 (6th Cir. 2007). This Court does not require counsel's descriptions of activities in a block billing entry to be "further described by time spent on each individual activity." *Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 273.

Plaintiffs' descriptions of local counsel's activities are sufficient to assess "whether the cost o[f] the service is reasonably related to the quality or extent of service." *Id.* Using an example Defendants cite to argue the insufficiency of the entries, one attorney time entry includes the description: "Correspondence to and from potential marriage license clients; draft, edit, and finalize intervening complaint and motion for preliminary injunction; research re motion to intervene standard." Defs.' Resp. 23. Another example Defendants highlight says, "Prep cover page for 6CA, corresp re editing timeline and moots for oral argument; conference with cocounsel re briefing." *Id.* Although these are block entries, these descriptions detail the attorney's activities and are sufficient to assess the reasonableness of the quality and extent of service. *See Pittsburgh & Conneaut Dock Co.*, 473 F.3d at 273.

The Court will deny Defendants' challenge to Plaintiffs' block billed entries.

i. <u>The Unmodified Attorney Fees</u>

Plaintiffs request $1,126,664.27[8] in attorney fees. The Court will grant Defendants' challenge to $43,759.17 of those fees. The Court will award Plaintiffs $1,082,905.10 in attorney fees.

3. **The Fee Adjustment**

---

[8] This amount includes the $2,310 requested for attorney fees related to the Intervening Plaintiffs' intervening petition. *See* Pls.' Mot. Attorney's Fees & Costs 7, n.1.

The Court has discretion to adjust the lodestar amount under rare and exceptional circumstances. *Perry*, 2015 WL 4940121, at *1. The party seeking to enhance attorney fees "bears the burden of showing that such an adjustment is necessary to the determination of a reasonable fee." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 621 (6th Cir. 2007) (internal quotations and citations omitted). The Sixth Circuit has said that the Court may consider a variety of factors in determining the appropriateness of a fee enhancement, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barnes v. City of Cincinnati*, 401 F.3d at 745-46 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). In the majority of cases, the lodestar amount already reflects these factors within the Court's calculation of a reasonable hourly rate and hours billed. *See Gonter*, 510 F.3d at 621; *Blum v. Stenson*, 465 U.S. 886, 898 (1984). That is the case here.

Plaintiffs request a 75% upward fee adjustment. They argue that the litigation was a great success, although it was exceptionally complex, unpopular, and included many risks for the attorneys involved. While the Plaintiffs were clearly successful, the Court finds this litigation does not merit a fee enhancement. First, Plaintiffs mischaracterize this case as "unpopular." Plaintiffs enjoyed support from a wide-range of individuals and organizations at every level of litigation, including amicus briefs filed in support by the American Bar Association, 167 United States Congressmen, 44 United States Senators, and officials from multiple states.

This widespread and varied support differs from the Sixth Circuit's affirmation of similar multipliers in civil rights litigation. For example, in *Barnes v. City of Cincinnati*, the Sixth Circuit affirmed a 75% enhancement because the district court found that counsel could not be obtained without applying this multiplier. 401 F.3d at 746; *see also Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (noting that a 100% fee enhancement was appropriate in part because of the "likelihood that no other attorney … would have accepted the case"). In *Barnes*, multiple attorneys submitted affidavits to the court that few attorneys locally or nationally would represent a transsexual police officer in bringing a sex discrimination claim against a city. 401 F.3d at 746.

Here, Plaintiffs did not face this overwhelming adversity. Not only would many attorneys have taken up similar cases, many attorneys across the country had and were representing similar clients with similar claims. *See, e.g.*, *Bostic v. Rainey*, 970 F. Supp. 2d 456 (E.D. Va. 2014); *Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014); *Geiger v. Kitzhaber*, 994 F. Supp. 2d 1128 (D. Or. 2014). The lack of undesirability which may merit a fee enhancement is underscored by the number of similar cases that were joined for oral argument. While this litigation had an important effect on society, a fee enhancement was not required to attract attorneys to take up this call to litigate.

Furthermore, the alleged complexity and novelty of this case is tempered by the previous and ongoing litigation in other districts and circuits during litigation. *See, e.g.*, *Bostic*, 970 F. Supp. 2d 456; *Whitewood*, 992 F. Supp. 2d 410; *Geiger*, 994 F. Supp. 2d 1128. This case did not exist within a vacuum and Plaintiffs did not tread their path to the Supreme Court on their own.

The issues in this case were important to the clients and to the general public. The attorneys provided high quality representation and certainly did achieve a successful result. These reasons alone, however, are not enough for the Court to enhance the requested attorney fees. The lodestar calculation already accounts for the attorneys' skill, experience, labor, and success.

The Court finds that the lodestar amount is appropriate and declines Plaintiffs' request to upwardly enhance that amount.

4. **Conclusion**

The Court will grant Plaintiffs' request for costs in full for the amount of $32,727.86. In total, the Court will grant in part Plaintiffs' request for attorney fees and costs in the amount of $1,115,632.96 and will deny the remainder of their request.

A separate order will be entered in accordance with this opinion.

January 13, 2016

**Charles R. Simpson III, Senior Judge**
United States District Court